ALLEN, Appellant, v. Moss, Respondent.

1. By the Spanish law a verbal sale of immovable property was valid; to constitute such a sale valid it was not necessary the vendee should take possession, though taking possession would be strong corroborative evidence of such a sale.

2. The eighth section of the act of October 1st, 1804, (1 Terr. Laws, p. 47,) requiring all deeds and conveyances to be recorded under the penalty of being adjudged fraudulent and void against subsequent purchasers and mortgagees, did not overthrow the rule of the Spanish law making verbal sales of land valid.

3. Where a deed of conveyance purports to have been executed by making a mark or cross and has been attested in the same manner, the 27th section of the act of March 25th, 1845, (R. C. 1845, p. 223,) did not authorize the granting of a certificate of proof of such a deed.

4. Where a document is admissible in evidence for any purpose, it should not be excluded; it devolves on the opposite party to call on the court to state and explain to the jury how far and for what purposes it is evidence.

5. The record of a deed not acknowledged or proved according to the law in force at the time such record was made, imparts notice to all persons of the contents of such deed. (See R. C. 1855, p. 731; Sess. Acts, 1847, p. 95.)

6. Under the act of July 3, 1807, (1 Terr. Laws, p. 120, § 45,) a sheriff's deed unacknowledged in court was ineffectual to pass the title to the purchaser; the authority of the sheriff being statutory, it should have been strictly pursued.

*Appeal from Jefferson Circuit Court.*

The facts are set forth with sufficient fullness in the opinion of the court.

*S. T. Glover*, for appellant.

I. The court erred in receiving as evidence the transcript

of the record on the claim of Smirl. It could not be used as evidence of title in any way; nor could the supposed deeds in said transcript contained be received as evidence against the plaintiff without some proof of their execution. The court erred in receiving the originals of said supposed deeds when offered by the defendant as evidence in connection with the affidavits of William Moss and Claibourne Thomas. They were no evidence of the execution of said deeds. (See R. C. 1845, p. 222, § 22.) The act of February 2, 1847, (Sess. Acts, 1847, p. 95,) is no help to this testimony. The court erred in instructing the jury, on motion of defendant, that prior to 1816 no writing was necessary to a sale and conveyance of land. (See 1 Terr. Laws, p. 47, 178.) Instructions No. 5, 6 and 8 were erroneous. The court erred in not holding the unrecorded deeds void as against subsequent purchasers, for value, who recorded their deeds after the lapse of time mentioned in the statute. The execution of the deed of Ware and Clark and Brinley was legally proved. (R. C. 1855, p. 726, § 18.) The court erred in not giving the instruction asked by plaintiff, with respect to the plaintiff's deed to Clark. When Clark joined Brinley in purchasing the land from Ware, he was estopped to deny that the deed of Ware conveyed the land to himself and Brinley in 1815.

*Noell*, for respondent.

SCOTT, Judge, delivered the opinion of the court.

The foundation of this suit is a settlement right under the second section of the act of Congress of March 2d, 1805. The settler was Hardy Ware. In 1805 or '6, James Smirl, assignee of John Brinley, who was assignee of Hardy Ware, presented the claim to the board of commissioners, who in 1806 rejected it for want of actual inhabitation on the 20th December, 1803. This claim might have been confirmed, as it appears from the evidence, under the third section of the act of June 13, 1812; but, as no steps were taken to effect

that object, it can not now be sustained as a confirmation under that section. Under the seventh section of that act, William Russell, as agent for the claimant, gave notice to the recorder that the legal representatives of Hardy Ware claimed eight hundred arpens of land in the district of St. Louis, on the Meramec river. This claim embraced the land in controversy. It was filed on the 12th November, 1812 ; was reported for confirmation by the recorder and confirmed by the act of 29th April, 1816. It was confirmed to the legal representatives of Hardy Ware. On the 11th day of August, 1815, Hardy Ware conveyed the claim to William Clark and John Brinley, by a deed recorded on the 23d of September, 1816, the northern half to Brinley and the southern half to Clark. On the 9th day of December, 1815, John Brinley conveyed his part to William Russell. This deed was recorded on the 13th day of December, 1815. In February, 1855, Russell conveyed to Thomas Allen, the plaintiff, by a deed recorded the 30th day of May, 1855. Before the board of commissioners and the recorder, there was a deed from Hardy Ware to John Brinley and one from John Brinley to James Smirl, both dated in October, 1805, on a day of the month not named. The grantors in these deeds, as well as the subscribing witnesses, were crossmen. On the 6th day of December, 1848, the execution of these deeds was proved by two witnesses. This was done under the 27th section of the act concerning conveyances, with a view that the deeds might be admitted to record. All the parties to the deeds, the grantors as well as the witnesses, having signed with a cross, the witnesses could not prove the handwriting, but testified that they were present and saw the parties sign the deeds, and heard them acknowledge that they were their acts and deeds respectively. They also saw the subscribing witness sign his attestation with a cross. In July, 1811, William Clark recovered a judgment against James Smirl, on which an execution issued, by virtue of which the claim of Smirl was sold and Clark became the purchaser. The deed to Clark was never acknowledged in

open court. It was dated on the 7th March, 1812, and a great many years afterwards its execution was proved by a subscribing witness and it was put upon record. Allen, the plaintiff, did not show any conveyance from Clark to him, directly or indirectly, of the land purchased by Clark at the sheriff's sale. There was evidence offered to show the want of identity between the Hardy Ware who executed the deed in 1806, and the Hardy Ware who signed the deed in 1815 to Clark and Brinley. One of these deeds was signed with a cross, and the other without it. There was offered also evidence to show that William Russell, under whom the plaintiff claimed, was aware of the claim of Smirl to the land in dispute. The defendant claimed in right of one of the heirs of James Smirl. This suit is for the northern half of the claim conveyed in 1815 by Ware to Brinley.

The court, at the instance of the plaintiff, gave the following instructions : " 1. The confirmation of the tract of land in controversy by the act of Congress of 29th April, 1816, was a confirmation to the legal representatives of Hardy Ware. 2. The legal representatives of Hardy Ware are such persons as are shown by the evidence to be legally entitled to the land confirmed by purchase from him, and showing a chain of valid transfers and conveyances from him. 3. Under the Spanish law that prevailed in the territory of Missouri until 1816, it was not necessary, in order to convey real estate, that there should be a deed or other instrument of writing executed by the seller to the purchaser, but it was competent and legal to sell and convey title to a purchaser by parol without deed or instrument. 4. The claim of Hardy Ware's representatives presented by William Russell, as agent, to Frederick Bates, recorder of land titles and acting commissioner for settling claims to land in the territory of Missouri, was confirmed by the act of Congress approved 29th April, 1816, and enures to the benefit of such person or persons as are shown to have title to the land acquired by a regular chain of valid transfers from him. 5. If the jury find from the evidence that the deed from Hardy

Ware to Clark and Brinley be a genuine deed and that it was recorded before the deed of Hardy Ware to Brinley and before the deed of Brinley to Smirl, then the title acquired under the first mentioned deed is a better title than that acquired under the two last mentioned deeds. 6. There is no evic̃ ace before the jury of a confirmation of any other claim, dist-·ct from that of Hardy Ware's legal representatives. 7. Thei-·'s no evidence before the jury of the confirmation of any claim to Smirl other than the one to which he may have shown title to as the representative of Hardy Ware. 8. In the absence of any evidence to the contrary, the jury will infer that the Hardy Ware who claimed and first settled the land in controversy is the same person mentioned in the various deeds in evidence."

The court refused to give the following instruction asked by plaintiff: " 9. The deed from McNair, sheriff of St. Louis district, to Clark divests Smirl or his heirs of all title to the land thereby conveyed; and if the jury find that the land described in said deed is the same land claimed by defendant, then neither Smirl nor those claiming undr him are legal representatives of Hardy Ware."

The defendant then asked the court to instruct as follows: " 1. Under the Spanish law that prevailed in the territory of Missouri until 1816, it was not necessary, in order to convey real estate, that there should be a deed or other instrument of writing executed to the buyer by the seller; but it was competent and legal to sell and convey title to a purchaser by parol without deed or written instrument, provided the party purchasing took possession of the real estate so bought by him. 2. The claim of Hardy Ware's legal representatives, presented by William Russell as their agent, to Frederick Bates, recorder of land titles and acting commissioner for settling land claims in the territory of Missouri, was confirmed by the act of Congress of 29th April, 1816, and enures to the benefit of such person or persons as are shown to have had a valid title to the land on that day, and now is the property of such person or persons, or those

who may legally claim under them. The confirmation by act of Congress of 29th of April, 1816, was a confirmation to the person or persons on that day legally entitled to the settlement right of Hardy Ware, the original claimant in Spanish times. 3. If the jury believe from the evidence that the claim of Hardy Ware to the land in controversy was sold by him to John Brinley in 1805, and by said Brinley to James C. Smirl in the same year 1805, whether such sale was by deed or other instrument of writing, or by parol, and that the said Smirl took possession under such sale, and that the land confirmed to Hardy Ware's legal representatives and in dispute here was the same land so sold to Smirl, and that Smirl had not conveyed or disposed of the same in any way pior to the confirmation, and he was then alive, they are instructed that the confirmation was to said Smirl, as the legal representative of Hardy Ware; and unless the plaintiff shows a title derived from him or those legally claiming under him, they will find for the defendant. 4. If the jury find from the evidence that Hardy Ware sold his claim to the land in controversy prior to the date of the confirmation on the 29th of April, 1816, then the confirmation was to such person as was the first legal purchaser from said Ware; and those who show themselves by evidence to be entitled thereto under such legal purchaser must recover in this action. 5. If the jury find from the evidence that at the date of the deed from Hardy Ware to Brinley and Clark, on the 11th of August, 1815, the said John Brinley had actual notice of the sale and conveyance by the said Hardy Ware to himself, said Brinley, and from said Brinley to Smirl in 1815, as evidenced by the deeds read in evidence by defendant, then the failure to have said last mentioned conveyance acknowleged or proved and recorded does not render them fraudulent or void as against said Brinley. 6. If the jury find from the evidence that William Russell at the date of the deed from John Brinley to William Russell, to-wit, the 9th of December, 1815, had actual notice of the sale and conveyance by Hardy Ware to John Brinley, and by said

Brinley to James C. Smirl in 1805, then such deeds are not fraudulent or void as against said William Russell. 7. The deeds from Ware to Brinley and from Brinley to Smirl, dated in the year 1805, having been proven and recorded prior to the 25th day of February, 1855, the date of the deed from Russell to the plaintiff, impart notice thereof to the plaintiff notwithstanding they may not have been proven and recorded within the time prescribed by law. 8. The jury may take into consideration the actual possession and occupation of Brinley and Smirl under the deeds of 1805 read by defendant, and also the facts stated by William Russell in the notice of the claim before the recorder of land titles in November, 1812, in determining whether said Russell had actual notice of the sale and conveyance of the claim to Brinley and from Brinley to Smirl in 1805. 9. If the jury believe from the evidence that the deed introduced by the plaintiff, signed Hardy Ware, and dated 11th August, 1815, purporting to convey the land in controversy to William Clark and John Brinley, was not executed by the same Hardy Ware who claimed the right to settle the land in Spanish times, they will find for defendant. 10. The plaintiff in this case can not recover for any interest in the land in controversy which Clark may have acquired under the sheriff's deed read in evidence." Of these instructions, the court gave those numbered 1, 5, 6, 8, 9 and 10, and refused those numbered 2, 3, 4 and 7.

The two instructions given by the court relative to the validity of sales of land without writing, under the Spanish government, were contradictory. That given for the plaintiff simply asserted the proposition that sales of land without writing were valid under the Spanish government. The instruction given for the defendant qualified this with the proviso that the party purchasing took possession of the estate bought by him. In the case of Gonzales v. Sanchez, 4 Mart. La. N. S. 457, which is the first reported in Louisiana in relation to this subject, we do not find any qualification of the rule, though it it said in that case that the purchaser

possessed and cultivated the land sold in the lifetime of the vendor. In the case of Macs v. Gillard's heirs, 7 Mart. N. S. 321, it is held that a verbal sale of immovables was valid under the Spanish government of Louisiana. The court remarks that " the evidence in this case, coupled with the uninterrupted possession of the vendee and his successor for nearly thirty years, satisfies us that La Cour did purchase as the defendants allege." In the case of Ducrest's heirs v. Byeau's estate, 8 Mart. N. S., it is said that " it has already been decided by this court, after much consideration, that by the Spanish law parol evidence was admissible to establish the alienation and acquisition of immovable property." In Sacket v. Hooper, 3 La. 107, it is said " that a verbal sale of real property, accompanied by delivery to and long possession of the vendee, was valid under the laws of Spain, has been already settled by this court in the case of Gonzales v. Sanchez, 4 Mart. N. S. 457." Upon the whole, we are of the opinion that the rule of the Spanish law relative to verbal sales of immovables was not like that of the common law, which made livery of seizin necessary to transfer a freehold estate; but that the taking possession was a strong circumstance in proof of such a sale, but not necessary to its validity. What would be a taking of possession must be determined from the state and condition of the immovable at the time of sale, and the purposes and objects for which it was intended. Land may be in such a state that immediate actual possession can not be taken of it. The evidence of possession must be the acts which were usually done in those times by persons claiming such lands. Where there is no proof of any possession nor evidence of any acts asserting a dominion over the property by the reputed purchaser, the allegation of a verbal sale would not receive much countenance from a jury. We are not aware that the eighth section of the act establishing recorders, passed in 1804, requiring all deeds and conveyances to be recorded, under the penalty of being adjudged fraudulent and void against subsequent purchasers or mortgagees, has been regarded as being in vari-

ance with the Spanish law on the subject of verbal sales. That act was simply designed for the protection of subsequent purchasers and mortgagees. The act to prevent frauds and perjuries, one of the objects of which was to prohibit parol sales of land, was not introduced until the 20th January, 1816. (Mitchel & wife v. Tucker, 10 Mo. 260.)

The court erred in permitting to be read, as recorded deeds, the conveyances of Hardy Ware to John Brinley and of Joseph Brinley to James Smirl, admitted to record on the proof of two witnesses under the 27th section of the act concerning conveyances. These deeds were both signed with a cross, and the attestation of the subscribing witness was also signed with a cross. The section referred to requires that the witnesses proving the execution of a deed in order to its being recorded, shall state on oath that they well knew the signature of the party whose name is subscribed to the deed ; so they shall state that they personally knew the person whose name is subscribed to such instrument as a witness and knew well his signature. It can not be perceived how a deed subscribed with a cross can be proved under this section. There is no handwriting to the instrument, either of the grantor or subscribing witness. It can not then be embraced in the law. The testimony of the witnesses amply proved the execution of the deeds, had it been given in court on the trial after accounting for the absence of the subscribing witness. But the existence of the evidence should have been preserved under the act for perpetuating testimony. To suffer deeds to be proved in an *ex parte* proceeding by living witnesses who saw them executed, would be a very dangerous practice. The error of admitting these instruments as recorded deeds was not helped by the fact that they were ancient. The genuineness of ancient instruments is a fact to be found by a jury. The court by suffering the instruments to be read as recorded deeds, withdrew from the jury the consideration of the question whether their execution was proved as ancient instruments. Under all the circumstances, they might have been submitted to the jury, who

would have determined whether they were genuine; but this was not done.

The copies of the deeds contained in the record, certified from the recorder's office, were certainly not any evidence whatever of title in James Smirl to the land in controversy. It is remarkable how often this question has arisen, and how little care seems to be taken in the trial of causes to avoid it. We have held that if a document is admissible as evidence for any purpose, it may be read, and it is the duty of the opposite party to call on the court to state and explain to the jury how far and for what purposes it is evidence, and to take care that the party using it obtains no unjust advantage by it; and we do think the court ought to be very particular in this matter, for they must see how eagerly it is pressed on them, on one pretension, when the object of it is to prepossess the minds of the jury by evidence which is not admissible. As it was deemed important to affect William Russell, under whom the plaintiff claims, and who was active in procuring the confirmation, with notice of the existence of these deeds, we do not see any objection to their use for that purpose.

From what has been said, instructions numbered 5 and 6, given for the defendant, were erroneous, as the deeds and conveyances referred to in them were improperly before the jury, and the instructions assume that they were properly in evidence. Had the deeds been properly in evidence to the jury there would have been no objections to them.

The seventh instruction asked by the defendant and refused should have been given. Although the deeds from Hardy Ware to John Brinley and from John Brinley to James C. Smirl were improperly recorded as deeds, yet the 46th section of the act concerning evidence makes deeds, which have been proved or acknowledged but not according to law, impart notice to all persons of the contents of such deeds. The deed from Russell to Allen was executed and recorded after the deeds above referred to had been put upon the record.

Instruction number 8, given for the defendant, would be unobjectionable if it had in plain terms stated to the jury the deeds to which reference was made. There would be no objection to it if it related to the deeds read from the recorder's transcript, and which had only been read to affect Russell with notice.

We see no objection to the ninth and tenth instructions given for the defendant.

There was no error in refusing the instruction asked by the plaintiff in relation to the effect of the sheriff's deed to Clark. That deed was not acknowledged in court as the 45th section of the act of 1807 required; it was not effectual as an instrument until it was so acknowledged, and Clark acquired no interest in any land under it. The conveyance of lands by a sheriff on a sale under execution is a statutory power, and the statute must be pursued, otherwise the conveyance can not pass title. We have held that a sheriff's deed not under seal would not convey a title; so also that a defective execution of a sheriff's deed could not be aided by a court of equity. It seems that the party's remedy in such a case would be under the 49th section of the act of 1807 concerning the practice at law. (Ter. Laws, p. 105.)

The terms of this confirmation are not like any that have fallen under our observation. The confirmation is to "Hardy Ware's legal representatives;" it was filed, as has been stated, under the seventh section of the act of the 13th June, 1812, by William Russell, agent for the claimant, on the 12th November, 1812. Now Allen, the plaintiff, claims under a deed executed by Hardy Ware long after the claim was filed. As the claim was confirmed to Ware's legal representatives, must not those representatives have existed at the time of filing the same? Would one be a representative who obtained a deed from him in 1815? The act confirming the claim, it is true, did not pass until the 29th April, 1816; but must it not relate back and affect those only who were the representatives of Ware at the time of filing it? The claim itself is founded on the pretension that at the date of

the filing Ware had conveyed away all his interest in it. Did he not stand in relation to it as any other person no ways connected in interest? If this is so, Allen claiming under Russell, who claimed under Ware by a deed executed in 1815, must show some agreement by Ware to convey made before the filing of the ·claim, otherwise he does not show himself a representative of Ware. If the deed of 1815 by Ware to Brinley and Clark was the execution of a previous valid agreement, Allen might be a representative of Ware, otherwise it is not seen how he can claim to be one.

As the case is made out by this record, Allen can derive no advantage from the deed of the sheriff to Clark. He shows no conveyance from Clark. Clark himself, as has been shown, acquired no title by that deed; there is, therefore, no ground for any estoppel. It is besides the well established doctrine of this court that a vendee may deny the title of his vendor, and protect himself by an adverse title acquired from another.

As the point in relation to the enurement of the confirmation was not made on the trial of the cause, and as it may be met by evidence, we are of the opinion that justice would be subserved by another trial. Both parties acted on the supposition, and their instructions assumed, that Ware might by a conveyance subsequent to the time of filing the claim for confirmation pass a title to a *bona fide* purchaser without notice of the previous conveyances by him.

Judge Napton concurs; Judge Richardson not sitting, having been of counsel.