Papin v. Massey.

---

PAPIN, Defendant in Error, v. MASSEY, et al., Plaintiffs in Error.

| 27 | 445 |
|----|-----|
| 97 | 180 |

| 27 | 445 |
|-----|-----|
| 112 | 351 |

| 27 | 445 |
|-----|-----|
| 91a | 99 |
| 27 | 445 |
| 175 | 4444 |

1. The commissioners appointed by the act of Congress of July 9, 1832, (4 Statutes at Large, p. 565,) were authorized to examine those unconfirmed claims only that had been previously filed in the office of the recorder of land titles ; no new claims could be filed. After the passage of said act, claims undisposed of in the interval after their reservation from sale had ceased stood as they did before the passage of the act of May 26, 1824.
2. A confirmation by the act of Congress of July 4, 1836, (5 Statutes at Large, p. 126,) to a person or his legal representatives, will enure, if he had assigned his interest previously to the confirmation, or was dead at that time, to his legal representatives ; that is, to his heirs or to the assignee of whole or part. If only part had been assigned, the assignee and heirs would take as tenants in common.
3. A., the owner of an unconfirmed Spanish grant for 30,000 arpens, entered into a bond with B., in the penal sum of $20,000, conditioned for the conveyance by himself and his heirs of 14,000 arpens out of said grant of 30,000 arpens, provided said grant should be confirmed to the said A. or his representatives. Said grant was afterwards confirmed to said A. or his representatives. *Held*, that the confirmation enured to the benefit of B., as the legal representative of A., as to that portion (14-30) of the confirmed claim covered by said bond.
4. A party to a suit has no right to the reversal of a judgment therein for errors that do not in any way affect him, but other of the parties alone.

*Error to Franklin Circuit Court.*

On the 13th of October, 1797, James Mackay obtained from the Spanish government a grant of 30,000 arpens of land, which was located in separate tracts. The whole of said grant of 30,000 arpens was afterwards confirmed to the said Mackay or his legal representatives, by the act of Congress of July 4, 1836, with the exceptions made by the sec-

29—VOL. XXVII.

ond section of said act. Portions of said grant had been conveyed away by the United States previous to the confirmation. On the 10th of May, 1819, said Mackay executed and delivered to Charles Dehault Delassus the following instrument : " Know all men by these presents, that I, James Mackay, of the village of Carondelet, county of St. Louis, and Missouri territory, am held and firmly bound unto Charles Dehault Delassus, in the sum of twenty thousand dollars, money of the United States, to which payment well and truly to be made I bind myself, my heirs and successors, by these presents, sealed with my seal and dated this tenth day of May, year of Grace eighteen hundred and nineteen. The condition of this obligation is such, that if the above bound James Mackay, his heirs, executors or administrators, shall make or caused to be made unto the said Charles Dehault Delassus, his heirs or assigns, a deed of quit-claim for fourteen thousand arpens of land out of a grant of thirty thousand arpens of land granted to the said James by the Spanish government on the thirteenth day of October, 1799—partly surveyed under the Spanish government and partly under the American government—recorded in the recorder's office, book B, page 36 ; and situated on the rivers Cuivre, Bœuf and Bourbeuse—provided the whole of said grant of thirty thousand arpens be confirmed by the government to the said James or his representatives. But if the said goverment shall confirm to the said James as aforesaid only as many arpens as are contained in one league square, then and in that case the said James shall make the aforesaid deed of quit-claim to the said Charles for three thousand arpens of land only out of said grant and no more, and so in proportion shall be the division of any less quantity, always excepting and reserving from such division all the pieces or parcels of land which the said James gave already to those who settled on said grant—which pieces or parcels of land do not amount to more than twelve hundred arpens—then this obligation to be null and void ; otherwise to remain in full force and virtue. [Signed] James Mackay (seal). [Test :] M. P. Leduc."

On the 14th day of October, 1836, Delassus assigned and conveyed to Mary P. Leduc the above bond or obligation and all his interest in the tract of land mentioned therein. This assignment, though absolute on its face, was by way of security for a debt due from said Delassus to said Leduc. Mackay died about the year 1822, leaving a widow and eight children. Delassus died in May, 1842. Leduc died in 1842, devising his whole estate to Hypolite Papin. Said Papin also died in the year 1842, devising all his property equally to his children. In the year 1854, Joseph L. Papin, (plaintiff in the present suit,) who was administrator with the will annexed, of Leduc, commenced a suit in the St. Charles circuit court against the heirs and administrator of said Charles D. Delassus, to foreclose the equity of redemption of said parties. Said Papin recovered a judgment in this suit against said administrator for $34,125, and the equity of redemption was foreclosed, and a sale of fourteen-thirtieths of said 30,000 arpens decreed. At the sale of that portion of said confirmation which is in controversy, said Joseph L. Papin became the purchaser, and received the sheriff's deed therefor.

This is a suit by said Joseph L. Papin for partition of two parcels of land situate in Franklin county, being part of said concession and confirmation of 30,000 arpens. Defendants Blumenthal and Whitmore assert title under the heirs of James Mackay. The court, after deducting a certain proportional interest, assigned to the plaintiff Joseph L. Papin fourteen-thirtieths of the residue. A sale of said tracts was decreed.

*Dick* and *Knox & Kellogg*, for plaintiffs in error.

I. The bond of Mackay was inoperative to create an equitable ownership in the land in dispute. It was optional with the obligor to perform the condition. (State v. Woodward, 8 Mo. 354; Sweringen v. Christy's Adm'rs, 24 Mo. ——.) Mackay had no title when he made this bond. He never acquired the title. Any inchoate right of his was subse

quently barred. The grant to the heirs of Mackay of July 4, 1836, gave them the unencumbered title. (See Strother v. Lucas, 6 Pet. 763; 12 Pet. 453; Le Bois v. Brammell, 4 How. 459; Landes v. Brant, 10 Mo. 370; 15 Mo. 223; 16 How. 62.) The bond recited no consideration, and none was proven. To warrant a decree for specific performance a consideration would have to be proved. (Adams' Eq. 78, 80; 4 Johns. Ch. 500; 6 id. 224; 7 Dane's Abr. 543; Mosely, 37; 17 Mo. 242.) The deed of May 23, 1838, from certain of the heirs of Mackay to Leduc operated to merge and extinguish the bond. Besides, the bond itself was not legally proven. (Geyer's Dig. 127; 8 Mo. 481; 1 Dana, 166.)

II. The court committed error in holding that the form of the deeds to Whitmore and Blumenthal was such as to take them out of the protection of the registry law. It is only in relation to the common law release, which was a secondary conveyance, that it has been held that only what the releaser has passes. (5 Mo. 387; 8 Mo. 482; 9 Mo. 729; 11 Mo. 77; 7 Conn. 250; 21 Ala. 134.) The evidence did not prove actual notice of the bond.

III. Partition does not lie where plaintiff's title is denied.

IV. The court erred in admitting the record of the suit in St. Charles county; and also in admitting evidence of the transaction in 1822 between Leduc and Delassus, and in admitting the sheriff's deed to plaintiff. There was no privity between the parties to that suit and the defendants as to the title to this land.

*S. T. & A. D. Glover,* for defendant in error.

I. The bond of Mackay was operative to create an equitable estate in Delassus. (2 Sto. Eq. § 175; Newland on Contr. 307.) The confirmation was not to the heirs of James Mackay, but to Mackay or his legal representatives. (Penrose v. Watts, 8 How. 338.) The bond was properly proved. (6 Binn. 49; 1 Phill. 473, 466.) The bond was supported by a sufficient consideration. The seal imported a consideration. (6 Johns. Ch. 302; 3 Des. 341; 2 How. 426; Par-

sons on Contr. 354; 2 Mass. 162.) It ought to prevail over a subsequent purchaser who had notice. The evidence shows actual notice to Blumenthal and Whitmore. They claim under quit-claim deeds. The deeds from the Mackay heirs were operative to convey only such interest as they had. (13 Mo. 380; 20 Mo. 81; 3 Whea. 452.) The title in this case is denied by a part only of the defendants. The transaction between Delassus and Leduc was a mortgage. As a mortgage, it was necessary to foreclose it. The administrator of Leduc was the only proper plaintiff. The proceedings in St. Charles county were regular and were conclusive between Leduc's and Delassus' representatives.

SCOTT, Judge, delivered the opinion of the court.

The turning point in this cause is, as to the enurement of the confirmation made to James Mackay or his legal representatives by the act of Congress of July 4th, 1836. This confirmation embraces all the land the subject of this suit. The claim confirmed was filed before the commissioners, and was finally rejected in November, 1809. The appellant maintains that after this rejection the claim was by the act of 26th May, 1824, barred and extinguished; that under the subsequent act of July 9th, 1832, Mackay's old claim being dead, James Mackay's heirs appeared, claiming, and produced new testimony in support of their claim; and the claim being reported for confirmation and confirmed as stated, it enured to the heirs of Mackay. The second section of the act of 1832, in directing the commissioners to proceed to an examination of the claims with or without any new application of the claimants, never intended that the commissioners should examine any others than the unconfirmed claims before that time filed in the office of the recorder. No claim could for the first time be filed before the board organized by the act of the 9th July, 1832. The second section means nothing more than that the commissioners should act on the claims before that time filed, whether they were requested by the

claimants to do so or not. The privilege extended to the claimants to take new testimony was not designed to give them the right to file any new claim. The testimony taken could only be such as would support a claim already filed. What is there to distinguish this claim from all others acted on by the board? If this claim was dead and extinguished, why were not all the others in the same situation? Although in the interval between the 26th May, 1828—the last day for filing petitions under the act of 26th May, 1824—and the act of 9th July, 1832, for organizing the board, the reservation of these claims was taken away and they were subject to be sold as public lands, yet on the passage of the act of the 9th July, 1832, the reservation was restored. This restoration of the reservation made the undisposed of claims as though they had never been extinguished, and they stood as they did before the passage of the act of May 26th, 1824.

The claim, as has been stated, was confirmed to James Mackay or his legal representatives. The terms of the confirmation must determine the person to whom the claim is confirmed. There is no other guide. James Mackay, at the date of the confirmation, was dead. It enured then to his legal representatives. These representatives may be his heirs or assigns. If he had conveyed the claim, it would have enured to his assignee. If there had been no conveyance the title would have passed to his heirs. If only part of it was conveyed, the heirs and assignee would have taken it as tenants in common. This has been the uniform construction of a similar phrase in the recorder's certificates under the act for the relief of sufferers by the earthquakes in New Madrid. The confirmations under the act of the 4th July, 1836, have received a similar construction. Whatever may have been the language of the supreme court in the case of Bissell v. Penrose, the fact is that Rudolph Tellier showed himself to be the assignee of Benito Vasquez, one of the original grantors of the concession. But we do not conceive that there is any thing in that case which conflicts with any opinion expressed by us. There, the court refers to and

adopts the instructions of the commissioner of the general land office, in which is found the following passage : " You will make out a patent certificate in the name of the person to whom the land was confirmed, or his legal representatives, and the patent will be issued to the confirmee or his legal representatives, thus relieving you, as well as this office, from the labor and responsibility of examining and deciding upon all transfers or assignments of the claims, and leaving the genuineness and validity of such transfers to be decided upon by the courts of the state, which are the only proper tribunals for such investigations." (2 Land Laws, p. 747, 748.) In the case of Bissell v. Penrose, the confirmation was to Benito, Antoine, Hypolite, Joseph and Pierre Vasquez or their legal representatives ; and Rudolph Tillier showing himself to be the assignee of Benito, the court held that the confirmation enured to him. That was a confirmation under the act of July 4, 1836. (Hogan v. Page, 22 Mo. 65 ; Mercier v. Letcher, id. 66.)

The next question in order is, whether the bond executed by Mackay, on the 10th May, 1819, to Delassus conveyed any interest in the concession to him. The bond is a penal one for the sum of twenty thousand dollars, conditioned that Mackay shall convey to Delassus fourteen thousand out of a concession of 30,000 arpens made to him by the Spanish government, if the grant was confirmed. This concession embraces the lands in dispute. Many objections have been made to this bond, and it was very zealously argued that it passed no interest in the land to Delassus. Although a deed could not have been required from Mackay until the land was confirmed, the title bond being as effectual in equity to pass an interest as an actual conveyance there was no necessity for a deed. This bond was executed after the introduction of the common law. Where a person has stipulated to do a particular act under a penalty in case of omission, and it plainly appears that the specific performance of that act was the primary object of the agreement, and the penalty intended to operate merely as a collateral security, though at

law the party might make his election either to do the partic-
ular act or to pay the penalty, a court of equity will not per-
mit him to exercise such a right, but will compel him to
perform the object of the agreement. It plainly appears
from the bond that its object was to secure the conveyance
of the land. It was then a contract which a court of equity
would specifically enforce. If it was such a contract it crea-
ted an interest in the land, for courts of equity regard that
as done which a party agrees to do. A bond imports a con-
sideration. To require proof of the consideration of a bond
upwards of thirty years old, would have the effect of declar-
ing all such instruments of no avail. After such a lapse of
time, it would be an accident if the consideration of a bond
could be proved. Of what avail would be the rule of law
which makes age prove the due execution of an instrument,
if the consideration of it has afterwards to be established. In
olden times the usual way of making a penal bond was to
sign the obligatory part, and under the signature to write the
condition, which need not to have been signed. The signa-
ture to this bond is under the condition, but that does not
affect it. There is no foundation for the opinion that the
owner of an inchoate Spanish grant could not affect it with
equities as readily as he could lands to which he had a per-
fect title. Such claims were always held and esteemed as
lands. They were transmissible by descent, devisable, could
be assigned and transferred, were subject to execution, and
could be affected with equities like any other real estate of
which a person could be seized. Because the policy of the
federal government did not permit these inchoate rights to
be made a foundation for asserting a title as against the Uni-
ted States until their validity was recognized, that does not
affect this question, which is, how these concessions were
regarded by our laws, not how they were considered by the
government of the United States as to itself. It is true that
the courts can not decide upon the rights of the parties an-
terior to the confirmation in relation to the inchoate title and
divert and alter the effect of the confirmation. But that

principle is not involved in this controversy. Its application would take the matter in dispute for granted. Those claiming under Delassus do not maintain that they have an equity to the inchoate title, which would give them a right to demand of the confirmee conveyance of the legal title granted by the confirmation, but they assert that by the terms of the confirmation they are themselves the confirmees. The principles which influence courts of equity in decreeing the specific performance of contracts can not have any application in this suit. As the legal title passed by the confirmation to those claiming under Delassus, there was no necessity for the interference of a court of equity.

If then those claiming under Delassus are the confirmees of the Spanish grant, then all questions as to the deeds from Mackay's heirs to Blumenthal and Whitmore are beside the case, so far as those claiming under Delassus are concerned. If the legal title passed to them by the confirmation, neither Mrs. Mackay nor the heirs of Mackay could affect it by their conveyances, as the confirmation enured as a grant to them. The heirs of Mackay could no more convey that title, so far as it enured to those claiming under Delassus, than they could convey the land of any other person.

We understand that Blumenthal and Whitmore alone complain of the judgment of the circuit court. They have no right to reverse that judgment for any errors which do not affect them. The plaintiff Joseph L. Papin was one of the heirs and devisees of Hypolite Papin, who was the devisee of Leduc, who claimed under Delassus. According to the theory of the case as stated by the appellants, he had an interest in the land then which entitled him to bring this suit. Now, that he claimed and had assigned to him more of Hypolite Papin's interest in the confirmation than he was entitled to does not affect Blumenthal and Whitmore. Increase or diminish Joseph L. Papin's interest in his father's share, and it does not lessen or affect the interest of Blumenthal and Whitmore. But if there were errors in the proceedings instituted to foreclose the equity of redemption of the alleged

mortgage, does it therefore follow that the validity of those proceedings can be contested in a collateral action? Admit the court erred in regarding Leduc's title as an equitable mortgage, yet when a sale was made under the judgment rendered, although that judgment was erroneous and might have been reversed, yet the title would pass. If the heirs of the mortgagee were necessary parties as plaintiffs or defendants—which is not at all certain, as under our system of law the legal title of the mortgagee can be passed by a judicial sale—yet the omission to make them parties would not render the judgment void. (Sto. Eq. Pleading, p. 183-4.) If an administrator should represent an absolute interest in the land to be but a mortgage and have the equity of redemption foreclosed, whereby the estate of which he had the charge was damnified, he would be liable on his bond for such maladministration; and if he became a purchaser at the sale under the decree of foreclosure he would be a trustee for those to whom the estate belonged. In this proceeding the legal title is alone in question. Joseph L. Papin is possessed of that title. The judgment then was not erroneous in assigning to him all of Hypolite Papin's interest. In expressing this opinion, however, we do not wish to be understood as intimating that J. L. Papin may not be compelled to convey the legal title to the portions of the other heirs and devisees of Hypolite Papin. We do not consider that this judgment at all affects any right the other heirs of H. Papin may have to treat J. L. Papin as a trustee. Indeed we understand the petition as acknowledging the equitable rights of the other heirs in the portion assigned to J. L. Papin.

Judgment affirmed; Judge Napton concurs. Judge Richardson not sitting, having been of counsel.