GARNIER, Plaintiff in Error, v. BARRY, Defendant in Error.

1. The proviso of the act of June 22, 1821, (1 Terr. Laws, 756,) to the effect that nothing therein contained should "in anywise authorize husband and wife to convey [any] estate granted to the wife and heirs after intermarriage" does not apply to a confirmation, by the act of Congress of June 13, 1812, of a Spanish concession or claim cast upon the wife by descent previous to her marriage; nor does said proviso apply to the case of an inheritance by a wife during marriage of such a confirmation; husband and wife might, under said act of June 22, 1821, convey land thus confirmed to the wife during marriage, or thus falling to her by inheritance.

2. The second section of the act of December 6, 1821, (1 Terr. Laws, 798,) was applicable to a conveyance by husband and wife of the latter's real estate under the act of June 22, 1821; consequently, such a conveyance was not entitled to be admitted to record unless the certificate of acknowledgment contained the requisites prescribed by the said second section of the act of December 6, 1821. It was necessary that the certificate should state that the persons making the acknowledgment were personally known to the person taking the same, or were proved by two credible witnesses, whose names were mentioned therein, to be the proper persons who made and executed the deed.

3. The fifty-eighth section of the act concerning evidence (R. C. 1855, p. 733) is not, it seems, applicable to the case of the record of a deed defectively acknowledged; a certified copy of the record of such a deed and of the time of its record, though accompanied with proof of claim and enjoyment under such deed for ten consecutive years, would not, under said section, be *prima facie* evidence of its execution and genuineness.

4. A. and B., husband and wife, on the 10th of December, 1823, executed a conveyance of land belonging to the wife. The acknowledgment was taken on the same day before a county court, which was composed of at least three judges, and certificate thereof was in the following form: "Be it remembered, that on, &c., appeared in open court A. and B., his wife, and acknowledged the foregoing deed of conveyance from them to L. A. B. to be their voluntary act and deed for the purposes therein expressed; she, the

said B., being privily and apart from her said husband examined, declared that she did freely and willingly seal and deliver the said writing and wished not to retract, and she being previously made acquainted with the contents thereof." This acknowledgment was attested by the presiding justice under the seal of the court. *Held*, that this acknowledgment was sufficient to pass the title of the wife under the act of June 22, 1821; (1 Terr. Laws, p. 756;) the certificate of acknowledgment was not, however, sufficiently in conformity to the second section of the act of December 6, 1821, (id. p. 798,) to authorize its admission to record.

5. The act of February 14, 1825, (R. C. 1825, p. 220, § 12,) regulating conveyances, required a married woman, making an acknowledgment of a deed of conveyance of her estate, to "appear before some court of record." In a certificate of acknowledgment taken before a judge of a probate court, and certified by him, he having no clerk, it was stated as follows : " At a *term* of the probate court for, &c., before me, M. P. L., judge of said court, personally appeared M. G., wife, &c., who is personally known," &c. *Held,* that the acknowledgment was good.

## *Error to St. Louis Land Court.*

This is an action in the nature of an action of ejectment to recover possession of an undivided interest of a lot of ground embraced in a larger tract of one by forty arpens situate in the St. Louis common field. Said lot was confirmed by act of Congress of June 13, 1812, to the legal representatives of Auguste Condé. The claim of Condé's representatives was proven up before Recorder Hunt in 1825 under the act of 1824. It was duly surveyed by the United States in 1826. Both parties to this suit claim under Condé. Condé died in 1776, leaving two daughters his only surviving issue. In 1779 one of said daughters intermarried with Charles Sanguinette, and in 1797 the other intermarried with Patrick Lee. Charles Sanguinette died in 1818, and Mrs. Sanguinette in 1821, leaving nine children them surviving, of whom were Mary, (the plaintiff in this action,) who was born in 1781, and married in 1812 Joseph V. Garnier, who died in 1851; Caroline, who intermarried in 1818 with Horatio Cozens, and became discovert by his death in 1826; Adelle, who intermarried with John E. Tholozon in 1819, and Charles. Patrick Lee and wife both died in 1825, leaving six children :—Lydia, who intermarried in 1818 with Stephen

Rector and became discovert by his death in 1826; Constance A., who intermarried with Zalmon Palmer; Emily Rousseau; Ellen Rappernich; Sophia O'Fallon, and Oscar.

Plaintiff read in evidence a deed dated October 29, 1847, of Charles Sanguinette, Caroline Cozens, John E. Tholozon and Adelle his wife, and Lydia M. Rector, to Marie Garnier, the plaintiff, acknowledged about the same time and recorded in St. Louis county in April, 1850. Plaintiff also read in evidence a deed from Rousseau and Emily his wife to herself, dated and acknowledged December 28, 1847, and recorded in March, 1850; also a deed from Constance A. Palmer, Sophia O'Fallon and Ellen Rappernich to herself, dated, acknowledged and recorded in March, 1850.

The defendant offered in evidence a certified copy of the record in the recorder's office in St. Louis county, of a deed of conveyance purporting to be executed by Patrick Lee and Constance his wife, conveying to Louis A. Benoist an undivided half of a lot of one by forty arpens granted to Auguste Condé. This deed was dated December 10, 1823, and was accompanied by the following certificate of acknowledgment: "State of Missouri, county of St. Charles, ss. County court—December term, 1823. Be it remembered, that on this 10th day of December, 1823, appeared in open court Patrick Lee and Constance Lee his wife, and acknowledged the foregoing deed of conveyance from them to L. A. Benoist to be their voluntary act and deed for the purposes therein expressed. She, the said Constance, being privily and apart from her said husband examined, declared that she did freely and willingly seal and deliver the said writing and wished not to retract it, and she being previously made acquainted with the contents thereof. In testimony whereof, I, Robert Spencer, presiding justice of said court, have hereunto set my hand and caused the seal of said court to be affixed. [Signed] Robert Spencer, P. J. C. C. C. St. C. [Seal.] In testimony whereof, I, William Christy, jr., clerk of the said court, have hereunto set my hand and affixed my private seal, there being no seal of the court yet provided. William

Christy, jr." From the accompanying certificate of the recorder of St. Louis county, it appeared that this deed was recorded December 11, 1823. This deed was admitted in evidence against the objections of plaintiff.

The defendant also offered in evidence a certified copy of the record of a deed purporting to have been executed by J. V. Garnier and Marie Garnier his wife, in favor of L. A. Benoist. The deed was dated April 28, 1827, and was recorded September 15, 1830. The certificate of acknowledgment on the part of Mrs. Garnier was as follows: " State of Missouri, county of St. Louis, ss. Be it remembered, that at a term of the probate court for the county and state aforesaid, begun and held at the city of St. Louis, in said county, the 19th day of March, 1827, before me, Mary P. Leduc, judge of said court, personally appeared Marie Garnier, wife of Joseph V. Garnier, who is personally known to me to be the person whose name is subscribed to the foregoing instrument of writing as having executed the same. The contents of the said instrument of writing was made known and explained to her, and she, the said Marie, was examined separately from her husband whether she executed the same voluntarily, freely and without compulsion or undue influence of her husband; and being so examined, she, the said Marie, acknowledged said instrument to be her act and deed, that she executed the same voluntarily, freely and without compulsion or undue influence, and does not wish to retract. [Seal.] In testimony whereof, I, the said judge, have hereunto set my hand and affixed the seal of said court this 28th day of April, 1827. M. P. Leduc, J. Prob." This certified copy of the record was also admitted in evidence against the objections of plaintiff.

The defendant also offered in evidence a deed executed by John E. Tholozon and wife to Laveille and Morton conveying the wife's interest in the land in controversy. This deed was dated November 5, 1830, and was recorded July 25, 1855. There was evidence showing that Mrs. Garnier, the plaintiff, had knowledge of this deed at the time it was

executed. The deed was admitted in evidence against the objections of plaintiff.

The court gave the following instructions at the instance of the defendant: " 1. At the date of the respective deeds given in evidence of Joseph V. Garnier and wife and John E. Tholozon and wife to Louis A. Benoist, the said Garnier and wife and the said Tholozon and wife could, by the respective deeds of said parties acknowledged in conformity with the law then in force, convey any interest in the tract in controversy in this suit which the wife of said party derived by descent from her mother. 2. The acknowledgment of Mary Garnier, in the form such as appears upon the paper given in evidence by defendant purporting to be a copy of the deed of Joseph V. Garnier and wife to Louis A. Benoist, is a sufficient compliance, in point of form, with the law in force at the time said acknowledgment purports to have been taken in order to pass any estate, which she then owned, derived from her mother. 3. The jury are instructed that on the 10th day of December, 1823, Patrick Lee and his wife Constance could, by the deed of said parties, acknowledged in conformity to the law then in force, convey any title which is shown by the evidence in this cause to have been in Constance Lee at that date to the land in controversy. 4. The acknowledgment of Constance Lee, in the form such as appears upon the paper purporting to be a copy of a deed of Patrick and Constance Lee to Louis A. Benoist, given in evidence by the defendant, is a sufficient compliance in point of form with the law in force at the time such acknowledgment purports to have been taken, in order to pass any title which is shown by the evidence in this case to have been in Constance Lee at that date to the land in controversy."

The plaintiff asked and the court refused the following instructions: " 1. If Auguste Condé died leaving only two children, who were Mrs. Lee and Mrs. Sanguinette, the confirmation aforesaid was a grant of said land to them on the 13th of June, 1812, equally. 2. Upon the death of Mrs. Lee or Mrs. Sanguinette, the moiety of this land to her be-

longing, if undisposed of by deed or will, vested in her children or their descendants equally. 3. The paper read in evidence by the defendant, purporting to be a copy of a deed from Patrick Lee and wife to L. A. Benoist of their interest in certain lands, is not operative to convey to the said Benoist any interest of Mrs. Lee in the land confirmed to the legal representatives of Condé in the year 1812. 4. The paper read in evidence, purporting to be a copy of a deed from J. V. Garnier and wife to L. A. Benoist of their interest in certain land, is inoperative to convey any interest of Mrs. Garnier in said land. 5. The deed of J. E. Tholozon and wife to Laveille and Morton is inoperative to convey to the said Laveille and Morton any interest in the said tract of land confirmed to the representatives of Condé, which belonged to Mrs. Tholozon. 6. If the jury find that the deed of John E. Tholozon and wife to Laveille and Morton, read in evidence by defendant, was not recorded till after the making and recording of the deed by Tholozon and wife to plaintiff and by her read in evidence, then the first deed will not avail to defeat the second deed to plaintiff, unless the jury further find that plaintiff had, at the time of the making of said second deed to plaintiff, actual notice of the making and existence of said first deed to Laveille and Morton, and that it had been acknowledged by Mrs. Tholozon and her acknowledgment certified in such manner as to pass the estate of a married woman during marriage. 7. If the jury find that the deed from John E. Tholozon and wife to Laveille and Morton, read in evidence by defendant, was withheld from record for many years and for a long time after the making and recording of the deed of said Tholozon and wife to plaintiff and by her read in evidence, then such withholding from record is evidence of fraud, and plaintiff, even if aware of the existence of the said deed to Laveille and Morton at or about the time of the making thereof, had a right to presume that it had been cancelled, or the estate, which was thereby granted, had been revested in the said Tholozon and wife. 8. The paper read in evidence by defendant and purporting

to be a copy of a deed from Patrick Lee and wife to L. A. Benoist does not imply that any such original deed had been acknowledged and certified so as to have authorized the recording thereof, and therefore is not evidence of the fact that there ever was any such original deed. 9. The paper read in evidence by defendant, purporting to be a copy of a deed from Joseph V. Garnier and wife to L. A. Benoist, does not imply that any such original deed had been acknowledged and certified so as to have authorized the recording thereof, and therefore is not evidence of the fact that there ever was any such original deed."

The plaintiff took a nonsuit, with leave, &c.

*Gantt*, for appellant.

I. The land in controversy vested in Mrs. Lee during coverture by virtue of the confirmation. Prior to the confirmation Condé's representatives had no estate of which a court of justice could take cognizance. At best they had a mere claim upon the bounty of the government. The proviso of the act of June 22, 1821, is applicable. Besides, the certificate of acknowledgment is defective. (See Strother v. Lucas, 13 Pet. 453; Le Bois v. Brammell, 4 How. ——; 1 Terr. Laws, 756, 798.) The acknowledgment of the deed under which defendant claims the interest of Mrs. Garnier is imperfect. (R. C. 1825, p. 220; Elliott v. Piersol, 1 Pet. C. C. 328.) The deed of Mrs. Lee was admitted to record against law, and therefore in any legal sense it was not recorded at all. It is not therefore within section fifty-eight of the act concerning evidence. (R. C. 1855, p. 773.) There is no authentic copy of the deed in evidence. The court erred in refusing the instructions asked by plaintiff, and in giving those asked by defendant.

*Shepley*, for respondent.

I. The deed of Lee and wife was sufficient to pass any title that she might have in the land. The proviso of the act of June 22, 1821, does not apply to land held and acquired as Mrs. Lee held and acquired the land in controversy.

The deed was good under said act. Besides, it was sufficient to convey the estate of the wife independently of said act. Her interest in the land was under the Spanish law paraphernal. (Lindell v. McNair, 4 Mo. 380 ; Boyle v. Meegan, 19 How. 130.) The acknowledgment was sufficient. It was competent to use a copy of the record in evidence. Besides, it was proved by Benoist that the copy offered in evidence was a copy of the deed made to him. It was also properly admitted in evidence under the fifty-eighth section of the act concerning evidence. (R. C. 1855, p. 773.) The deed of Mrs. Garnier and her husband was competent to pass any right she had in the premises. It sufficiently appears from the acknowledgment that it was made in open court. The instruction asked by plaintiff in relation to the interest of Mrs. Tholozon was properly refused; so also the others.

Scott, Judge, delivered the opinion of the court.

Prior to the act of June 22, 1821, (1 Terr. Laws, p. 757,) there was no statute in this state which authorized the conveyance of her real estate by a married woman. That act prescribed a mode by which the husband and wife might dispose of the wife's land, with a proviso that it should not authorize in anywise husband and wife to convey any estate granted to the wife and heirs after intermarriage. The land in controversy was an interest in a village lot of St. Louis of one by forty arpens, the right to which was proved before the recorder of land titles in the name of the legal representatives of Auguste Condé under the act of Congress of 26th May, 1824: Auguste Condé died in 1776 leaving two daughters, Mary and Constance. Constance intermarried with Patrick Lee on the 18th July, 1797, and they, on the 10th day of December, 1823, conveyed to L. A. Benoist one-half of the arpent of one by forty arpens described as being the north half of a tract of land granted to Auguste Condé, as appeared by livre terrien No. 2, p. 27. The tract described included the lot which is the subject of this controversy.

The principal question in this case is whether, under the foregoing state of facts, the deed of Patrick and Constance Lee was effectual to convey the interest of Constance Lee, the wife. It was maintained on the part of the plaintiff that Patrick and Constance Lee having been married in 1797, and the land being confirmed to the legal representatives of A. Condé, her ancestor, by the act of the 13th June, 1812, the title then passing from the United States, they could not, on the 10th of December, 1823, the date of their deed to Benoist, alien the land, as it was conveyed to the wife and her heirs during the marriage, and therefore was by force of the proviso therein contained excepted from the operation of the act of 22d June, 1821.

The proviso in the act of 1821, which imposed a partial restriction on the right of the wife to alienate her property, was not in accordance with the principles of the common law and did not receive much countenance, as we find that it was repealed by an act passed the 16th January, 1833, and has never since been restored to our code. Under such circumstances there is no reason in justice nor policy which will warrant its receiving any other construction than that which its language will fairly warrant. It is true that on a Spanish title not complete before the change of government, a party had no standing in a court of justice, except so far as it was given to him by the legislation of the general or state government; and, except he had such aid, he could maintain no action for the enforcement of this unconfirmed grant or concession in any court, state or federal; nor could he maintain any action in which the title to the land was involved, for, as in all such cases the ultimate title was in the United States, it was useless to litigate respecting it before its emanation. But, notwithstanding this, it is well known that incomplete Spanish grants were as much regarded as property as real estate with a perfect title, in all contracts, and under the administration and execution laws, and also under the law of wills, descents and distributions. In the case of Landes v. Perkins, 12 Mo. 259, it was said that " it is a matter

of history, of which this court will take judicial notice, that at the time of the cession of Louisiana to the United States, in that portion of the territory of which this state is composed, nineteen-twentieths (there were but two or three exceptions) of the titles to land were like that involved in this case prior to its confirmation. There were very few complete grants. Most of the inhabitants were too poor to defray the expenses attending the completion of their titles, but they had faith in their government and rested as quietly under their inchoate titles as though they had been perfect. (Stoddart's Sketches, 245.) As early as October, 1804, we find the legislature speaking of freeholders, and authorizing executions against lands and tenements. See the law establishing courts for the trial of small causes passed October, 1804. (Sec. 10.) There being so few complete titles, the legislature, in subjecting lands and tenements generally to execution, must have contemplated a seizure and sale of those incomplete titles which existed under the Spanish government. At the date of the act above referred to no titles had been confirmed by the United States. An instance is not recollected in which a question has been made as to the liability of such titles as Clamorgan's under the Spanish government to sale under execution. It is believed that such titles have been made the subject of judicial sales without question ever since the change of government." (Papin v. Massey, 27 Mo. 452.) Clamorgan's title was an unconfirmed Spanish concession. The plaintiff, who would make it appear that there was no title or property in the land until the confirmation by the act of the 13th June, 1812, yet claims this very property by virtue of an inheritance which was cast in 1776. That descent made Constance Condé a legal representative within the meaning of the act of the 13th June, 1812, and had she conveyed the title that came to her by descent from her father, her alienee would have been the legal representative.

These considerations we deem sufficient to show that, although for some purposes unconfirmed grants could not be

used as real estate with a legal title, yet for many practical purposes such claims were regarded as property among the people, and by the state laws and in the way of contract they had all the attributes of real estate with a perfect title. We do not therefore see any ground on which it can be maintained that the land in suit was an estate granted during the intermarriage. For all substantial purposes the estate was in the wife before the marriage. Before she became a wife she could have secured that land to her own use, or to the use of her offspring, or any other person in trust for her, in as effectual a manner as though she had been clothed with the legal title. It is similar to the case of a *femme sole* seized of a trust estate who had married and afterwards taken to herself a conveyance of the legal title. Such a case would not be within the proviso of the act of 1821. As the land, notwithstanding the condition of its title, was at the time of the marriage as fully within her control and disposition as though she had a perfect estate in it, there is no reason why the confirmation by the act of June 13, 1812, should be called a grant within the meaning of the proviso of the act of 1821. There is nothing in the case of Hedelston v. Field, 3 Mo. 69, which is inconsistent with the foregoing opinion. We do not deem it necessary at this time to enter upon any discussion of the terms of the proviso of the act of 1821, with a view to ascertain what kind of an estate was intended by them.

The fourth instruction given for the defendant, although it may contain a correct principle in the abstract, yet assumes that the deed of Lee and wife was properly in evidence. Although the acknowledgment may have been sufficient to pass the estate, yet if it was not in such form as would authorize the instrument to be recorded, a copy of its record would not be evidence. In support of the view that the deed was properly read in evidence, the defendant maintains that the statute of December 6, 1821, (1 Terr. Laws, p. 799,) directing the officer taking the acknowledgments of deeds to certify his knowledge of the identity of the grantors, did not require

such certificate when the acknowledgment was made in court. The act of December 6, 1821, directs that when justices of the peace, judges, clerks of the courts, or persons authorized so to do, shall take the acknowledgment of any deed or other instrument in writing, made and executed of and concerning any lands, tenements or hereditaments, wherein or whereby the same may be affected either in law or in equity, they shall moreover add a certificate stating that the person or persons making the acknowledgments were personally known to him, or were proved by two credible witnesses (whose names shall be mentioned in the certificate) to have been the proper persons who made and executed the deed or other instrument in writing. Taking this section in connection with the act of June 22, 1821, empowering husband and wife to convey the wife's real estate, it will be seen by its terms it embraces acknowledgments under the act of June 22, 1821. That act prescribes that the examination of the wife shall be taken before one of the judges of the court. There was the same reason for the knowledge of the identity of the grantors in the one case as in the other, and although there might be more difficulty and a greater liability to exposure in attempting to personate another in open court than before an officer in a private place, yet as the thing might be done in either place, there is no reason for so limiting the construction of the act as to make it extend only to acknowledgments taken before an officer. The act of 1825 and all the subsequent acts require the identity of the grantor to be certified as well where the acknowledgment is taken in public as before an officer.

In the second place, it was maintained that under the fifty-eighth section of the act concerning evidence, the deed of Lee and wife was admissible because it had been recorded for ten years, and there was evidence that for ten years consecutively it had been claimed and enjoyed by those claiming through or under such deed. We do not see the application of the section to which reference has been made to the present case. If the deed was not properly recorded for

want of the necessary certificate of the identity of the grantors, then it was not recorded within the meaning of the section, and it is as though the deed had not been put upon the record. Besides, if it had been so that the copy was admissible, the jury should have been directed that they should be satisfied of the claim and enjoyment of the lot by those claiming through or under the deed before they could regard it as evidence. Although there may have been such evidence, that was not sufficient; for, by admitting the deed without such direction, the minds of the jurors were withdrawn from the consideration of it, and they may have thought it unnecessary to ascertain the fact of the enjoyment of the land by those claiming under the deed. (Allen v. Moss, 27 Mo. 362.) Neither was the copy transcribed from the records read to the jury as a copy of the original deed. The jury were not directed, that if they believed it to be a copy of the original, which was proved to have been mislaid or destroyed, it was evidence. The deed was suffered to be read as a properly certified copy of the record, which was erroneous. As the case stood on the instructions, the plaintiff's eighth instruction should have been given.

We are of the opinion that the certificate of the acknowledgment of the deed by Lee and wife was sufficient to make it effectual for passing the title to the wife under the act of 22d June, 1821. That act seems to have contemplated that the court, before which the acknowledgment of the married woman would be taken, would be composed of more than one judge, and hence requires that one of them should examine the wife and afterwards that she should acknowledge the writing to be again shown to her. At the date of this acknowledgment the circuit courts were composed of but one judge. If the statute is to be literally construed, then no court in which there were not two judges at least could take an acknowledgment of a married woman conveying her land. No one will maintain that the law intended that the circuit courts should be denied the power of taking the acknowledgments of married women to deeds conveying away their

estates. The manner of making the acknowledgment prescribed by the act of June 22, 1821, is not suited to a court with a single judge. Now if the statute will bear such a construction as will make good an acknowledgment before a court composed of a single judge, we see no reason why the certificate of acknowledgment endorsed on the deed of Lee and wife is not a sufficient compliance with the law. It sufficiently appears that the wife was examined by the court, and if an examination by one judge is sufficient, we do not see on what ground an examination by three would be bad. It appeared that Mrs. Lee was examined privily and apart from her husband.

The certificate of the acknowledgment of Mrs. Garnier to her and her husband's deed of the 29th of April, 1827, is sufficient. It is not pretended that a certificate of acknowledgment can be helped out by parol evidence, but it will be construed in reference to the laws in force which authorize it to be taken. In this certificate it is stated that " at a term, &c., before me, M. P. Leduc, judge of said court, personally appeared Marie Garnier," &c. This is the most usual form of making up records. If a party appears at a term before the judge of the court composed of a single judge, we can not see how it can be more forcibly expressed that he appeared in court. The act of 1825, under which the deed was acknowledged, did not require that it should be done in open court, and, if it did, we are of the opinion that it so appears from the face of the certificate. The wife was required to appear before some court of record. We can not conceive how the matter could be made to appear more plainly than it does. The certificate is given under the seal of the court and by one styling himself the judge thereof, the court having no clerk.

The objections to the admissibility of the deed of Tholozon and wife in evidence are not valid. The effect of the deed as evidence is another question. Our code at the date of the deed did not and at no time since has prescribed a period within which a deed must be recorded. The deed

when offered had been duly recorded. The statute however made it evidence without regard to its being recorded. As the certificate of acknowledgment proved the identity of the grantors, the eighteenth section of the act concerning evidence was not applicable to it. But as the deed was made and acknowledged in 1830, then, by virtue of the tenth section of the act concerning conveyances of the revised code of 1825, and the sixteenth section of the act concerning evidence of the revised code of 1855, it was clearly admissible in evidence. The deed was also admissible under the forty-fifth section of the act concerning conveyances. (R. C. 1855, p. ——, § 45.) As the deed had been duly recorded with an acknowledgment containing a certificate of the identity of the grantors, a copy of it was admissible in evidence.

Adele Tholozon married in 1819. Her mother, Mrs. Sanguinette, died in 1821. The land which she conveyed by deed to Lavielle and Morton in 1830 she inherited from her mother. It was no grant then to her and her heirs within the proviso of the act of 22d June, 1821.

The sixth instruction asked by the plaintiff in relation to the effect of the deed of Tholozon and wife was erroneous, inasmuch as it required the court to direct the jury that the plaintiff must not only have had actual notice of the deed to Laveille and Morton, but also that it had been acknowledged by Mrs. Tholozon and her acknowledgment certified in such manner as to pass the estate of a married woman during marriage. The registry act requires no such notice. If a purchaser has actual notice of a prior unrecorded deed, he must at his peril ascertain whether it is valid; if he purchases with a knowledge of its existence, he takes upon himself the risk whether or not it is valid.

There was no error in refusing the seventh instruction asked by the plaintiff. The fact of the delay in recording the deed from Tholozon and wife was no evidence of itself of any fraud. Every day's experience and observation satisfy us of the truth of this. Nor did the delay furnish any ground for a presumption that the deed had been cancelled,

or that the estate had been revested in Tholozon and wife. The failure to record the deed was a fact in the case, which the party might have used in an argument to the jury with the force the other circumstances gave to it. We do not maintain that the withholding a deed from record may not in some cases be evidence conducing to show a fraudulent intent, but we do say that the abstract fact of a failure to record a deed is not any evidence of fraud.

If the original deed from Lee and wife to Benoist has been lost or destroyed, a copy of it may be proved like the copy of any other lost instrument. We are not aware of any rule or principle of law which would require any greater or stricter proof of the copy of the certificate of the acknowledgment of the wife than of any material part of the deed. If the acknowledgment is endorsed on the deed and is sufficient in law, we do not see why the evidence that would satisfy the jury that the copy of the deed is a true one, would not also satisfy them that the copy of the acknowledgment on the deed is also a true one, nothing appearing which shows that it is not so.

Reversed and remanded; the other judges concur.