# CHRISTOPHER & SIMPSON ARCHITECTURAL IRON & FOUNDRY CO., Respondent, v. JOSEPH KELLY et al., Appellants.

**St. Louis Court of Appeals, December 3, 1901.**

1. **Pleading and Practice: SPLITTING ACCOUNTS: MECHANIC'S LIEN.** The rule against splitting accounts will not be applied where no injury can accrue to the debtor, nor a second claim be made for the same demand, if its application will defeat a party's claim to a lien under the mechanic's lien statutes.

2. **Parties: PRACTICE, APPELLATE.** No one is ordinarily entitled to be heard on the appeal of a cause except those who joined in the appeal.

3. ——: ——: **JUDGMENT.** A judgment will not be vacated as to a non-appealing party unless the decision in favor of one who appealed necessarily enures to the benefit of the other.

4. ——: ——: **APPEAL.** Where the contractor appealed from a judgment in a mechanic's lien suit and the landowner did not, and there is no merit in the contractor's appeal, the cause will not be reversed because an error was committed against the landlord; but the reverse is true where the landlord appeals and the contractor does not; for the landlord has a right to question the propriety of the judgment against the contractor, as it affects his land.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

*Wm. F. Smith* for appellants.

(1) The two leasehold estates became merged in a single estate in Ohio Building Company, as lessee, and the con-

tract between it and contractor Kelly was one indivisible con-
tract, as was also the contract between Kelly and respondent,
and all the parties treated and executed the contract upon that
understanding; respondent opened one account with contractor
Kelly for all the ironwork furnished under the contract, and
credited the account which covered the two premises with the
two payments and receipted accordingly, and gave notice of
its intention to .file a joint lien on the entire premises—hence,
respondent's demand was a single and entire demand and only
one account arose out of the transaction and respondent could
not, under said undisputed facts, split up or arbitrarily divide
the account into two demands, or split up and disturb the
credits already applied and file separate liens and maintain
two separate suits and recover two judgments against con-
tractor Kelly for the two parts of the one account and for the
costs incurred in two suits.   Lyons v. Carter, 84 Mo. App.
483; Ruddle v. Horine, 34 Mo. App. 620; Barnett's Ex'r v.
Murray, 62 Mo. App. 500; Funk v. Funk, 35 Mo. App.
246; Marble & Granite Co. v. Handean, 85 Mo. App. 313.
(2)   Where a plaintiff attempts to split up an entire demand
and maintain two or more suits thereon "the action first ad-
judged' becomes *res adjudicata* as to a subsequent proceeding
for part of the goods taken at the same time" regardless of
which suit was first commenced.   Funk v. Funk, 35 Mo.
App. 246; Ruddle v. Horine, 34 Mo. App. 620.   (3)   The
attempted separation and apportionment of the one account
and materials relating to the two leasehold premises, and the
forced changing and application of the credits, was purely
arbitrary, and was not based upon facts or evidence warrant-
ing such division or apportionment of either materials or
credits, and was in disregard of the manifest purpose, intent
and understanding of the parties whereby the credits were
applied when and as made, and the transaction and undertak-
ings were to be executed as entireties; and the court's findings
and conclusions were not based on evidence warranting same

—hence, unwarranted and erroneous. Lyons v. Carter, 84 Mo. App. 483; Barnett's Exr. v. Murray, 62 Mo. App. 500; Longworth v. Astire, 106 Mo. 155; Brewing Co. v. Finnell, 39 Mo. App. 276; 48 Mo. App. 505.

*Kortjohn & Kortjohn* for respondents.

(1)   These were two separate buildings on two separate lots, which, while they were contiguous, were, nevertheless, entirely separate.   They were owned by two different persons. But even if they had both been owned by the same person, respondent nevertheless had a right to file separate liens. Kick v. Doerste, 45 Mo. App. 134.   Defendant cites a long list of authorities which have no bearing on the case.   (2)   In La Crosse L. Co. v. Agr. & Mech. Ass'n, 59 Mo. App. 24, the point decided was that when a plaintiff has once placed himself in a position to bar himself from recovering from a debtor, then he can not afterwards have a lien; and that it requires an account to sustain a lien.   (3)   There can be no doubt that the rule in this State is, as is laid down in Kick v. Doerste, supra, viz.: That one making improvements under one general contract on buildings on contiguous lots, can file one lien for his whole claim, or separate liens for the different buildings.

GOODE, J.—This action originated before a justice of the peace and was brought to enforce a lien against a certain lot and the improvement thereon, in the city of St. Louis.

William M. McPheeters, trustee, owned a lot twenty-eight feet and eight inches wide at the southwest corner of Tenth and Olive streets, on which stood formerly a two-story brick residence.   Edward F. Wickham, trustee, owned twenty-five feet of ground on Olive street west of and contiguous to the McPheeters lot, on which there was a similar residence. These residences had their own separate east and west walls

which abutted.   On the first day of July, 1896, the Ohio
Building Company leased both of said lots from the respective
owners for ninety-nine years.   There was a proviso in the
leases that the old buildings should be removed and a new
structure erected thereon within a year, to cover substantially
the area of the two lots and to cost as much as seventy-five
thousand dollars.   On the first day of September, 1898, a
new contract was made between the lessor and lessee, modify-
ing the original leases by extending the time within which
the lessee should be required to erect said new structure to the
first day of October, 1908, and consenting that in lieu thereof,
alterations of the old buildings might be made by which they
would be converted into storerooms below and officerooms
above, each building to have an addition built in the rear and
openings made connecting the storerooms and giving access
to the offices in the Wickham building from a hall to extend
along the west side of the McPheeters' one.

The Ohio Building Company entered into a contract with
Joseph Kelly to make the alterations.   Kelly made a contract
with respondent to furnish the materials and do the work
called for in the plans and specifications under the head of
"ironwork."   In this contract the improvement is referred to
as one to be made on the building at Olive and Tenth streets;
but in that between Kelly and the Ohio Building Company,
the houses to be altered are mentioned in the plural number.
During the progress of plaintiff's work, Kelly made two pay-
ments, one of six hundred dollars and one of three hundred,
which were credited on a general account of the job kept by
plaintiffs.   Thereafter, as a balance remained unpaid on the
price of its work, plaintiff filed a lien against the McPheeters
building for one hundred and fifty-seven dollars, and another
against the Wickham building for one hundred and six dollars.
Much more iron and labor went into the work done by plaintiff
on the former than on the latter building, and the payment of
six hundred dollars was credited on the account for labor done

and materials furnished for the first one, and the three hundred dollars payment on the similar account for the second one.   These payments were thus applied with a view to filing liens and enforcing them by action.

The evidence shows that while the two buildings communicated after the alterations, they were not converted into one structure, but remained separate.   It was also shown the iron and labor furnished for each by plaintiff could be easily and accurately apportioned; in fact the material could be picked out.

The McPheeters' lien case was first tried, a judgment entered for respondent and paid.   When the Wickham case came to trial, that judgment was pleaded in bar of its prosecution by the appellants, they claiming that the account of plaintiff was an entirety and was adjudicated in the first action.   The justice of the peace took the opposite view and gave judgment for the plaintiff, from which Kelly appealed, but the Ohio Building Company and Wickham did not.

This court has been long committed to the doctrine that the rule against splitting an account will not be applied where no injury can accrue to the debtor or a second claim be made for the same demand, if its application will defeat the statutory lien in favor of mechanics and materialmen.   Hayden v. Logan, 9 Mo. App. 492; Lumber Co. v. Planing Mill Co., 59 Mo. App. 661; Lumber Co. v. Nelson, 71 Mo. App. 110; Kick v. Doerste, 45 Mo. App. 134.   We are unwilling to depart from the doctrine laid down in those decisions or cast doubt on its soundness, as it was established in aid of the remedial lien laws and is, in our opinion, perfectly sound. Where several contiguous buildings are erected under one contract, a subcontractor who does work on them for the original contractor, is bound to apportion the work done and materials furnished to the different houses in making up his liens, if he seeks a separate lien against each lot, as he still has the

option to do instead of filing a joint lien against them as provided in section 4227 of the Revised Statutes of 1899. Kick v. Doerste, 45 Mo. App., supra. To hold the rule against splitting an account applied in such instances, would practically destroy the separate remedy against the different buildings and partially defeat the object of the statutes as interpreted by the courts. The judgment in the McPheeters case was no bar to this action.

A point is made about the injustice to Wickham of the credits on the accounts against the respective properties. It was proved the structural iron and labor which went into each house could be exactly ascertained; also, that the value of what went into McPheeters' was nearly twice what went into Wickham's. The credits, therefore, were applied so as to be approximately just to the owners.

We gather from the record that no one appealed from the judgment of the justice of the peace but Kelly; and certainly it could make no difference to him how the payments were apportioned between the buildings in the lien accounts; for he owed and was liable for the entire balance. Where there are several defendants appealing, one may make the affidavit and enter into the recognizance in behalf of the others, as well as himself, and the appeal will be for all. This is because the statutes do not require the applicant for an appeal to make the affidavit in person. It may be done by some one else for him. Morgner v. Birkhead, 34 Mo. 214. But the appeal will only entitle those parties, who appear from the record to have joined in it, to a hearing in the upper court. A non-appealing party can not complain of errors or derive any benefit from them. Sutton v. Dameron, 100 Mo. 141; Rodgers v. Wolfe, 104 Mo. 1; Callaway Co. v. Henderson, 119 Mo. 32; Sanderson v. Wertz, 44 Mo. App. 496. That rule is universal except where it is relaxed from the exigency of the circumstances; that is, where a decision in favor of an appealing party necessarily enures to the advantage of a non-appealing one; as where it is

impossible to reverse a judgment at the instance of an appellant, who is entitled to a reversal, without reversing it at the same time as to his co-party who submitted to it.

Certain decisions of the appellate courts of this State in mechanic's lien cases are of that kind: Carthage Marble & White Lime Co. v. Bauman, 55 Mo. App. 204; Bruce Lumber Co. v. Hoos, 67 Mo. App. 264. An attentive reading of the opinions will disclose that in both of those cases the landowners appealed from the first judgment; though this fact is obscure in the second one, where the plaintiff appealed too, the first time, because its lien paper was excluded. Bruce v. Hoos, 48 Mo. App. 161. But it was stated in the opinion on the second appeal that the defendant mortgagees did appeal the first time and the question is treated on the assumption that they, as owners or as having an interest in the land, as well as the plaintiff, appealed. The rule laid down by those decisions is, that where the owner of the property, or an incumbrancer, successfully prosecutes an appeal from a judgment in favor of a subcontractor, laborer, or materialman, in an action to enforce a mechanic's lien, the reversal wholly vacates the judgment so that it no longer remains standing against a non-appealing contractor. The rule is sound; for an owner has the right to question the propriety of the amount of a judgment against an original contractor, whether the latter does or not, because the property is charged with payment if the contractor is insolvent. But no appellant should be allowed to take advantage of an error committed against his non-appealing co-party in the court below which did not affect him. Papin v. Massey, 27 Mo. 445; Wall v. Nay, 30 Mo. 494; Smith v. Railway Co., 53 Mo. 338.

It should be borne in mind there is no judgment against the landowner; the judgment is against the contractor, secured by a lien on an estate or interest in the land; and therefore if reversed at whosesoever instance, it is, of course, no longer in force against the judgment debtor. This result can not be

avoided, and ought not to be; otherwise various anomalies might occur. If the judgment stood against the contractor after a reversal on the appeal of the owner, and there did not have to be a trial *de novo* of the whole matter, perchance there might be a larger verdict on the second trial than there was on the first one; in which event there would be a lien for a greater amount than there was a judgment against the contractor. But the latter is the actual debtor and primarily liable; and the charge on the land is incidental to an indebtedness adjudged against him which must be made out of his property, if sufficient can be found.

This rule vacating the judgment as to a non-appealing party ought to be extended no further than is necessary to effectually carry out the purposes of the lien statutes; because it is in contravention of the general doctrine that no party to a judgment shall be benefited by an appeal unless he joins in it, and allows a party to share in all the advantages of an appeal without being responsible for any part of the costs or expense. Neither is the rule founded on the entirety of judgments, whatever that doctrine may be worth; and it is worth much less than it once was. The original effect of it was, that if a judgment was void as to one of the parties thereto, it was void as to all. It was founded on a dictum and has been much discredited and weakened. 1 Freeman on Judgments (4 Ed.), sec. 136. A study of the later cases of our Supreme Court on the subject will show, in harmony with what has been said above, that it is never applied, except under compulsion from the nature of the case. It is common for judgments to be reversed as to one of the parties, or set aside for irregularities or want of jurisdiction, while it is upheld as to others. The rule now established is, that a judgment against several defendants, invalid as to one or more, may be reversed as to them and affirmed as to the others. This rule has been established in deference to the principles of the code, which has adopted the procedure in equity in this respect, and positively

forbids the reversal of a judgment unless error was committed against *the appellant or plaintiff in error* and materially affecting the merits of the action.    R. S. 1899, sec. 865.    Perhaps the current doctrine can not be better expressed than it was in an opinion which noticed and discountenanced the earlier cases laying down the doctrine of entirety as an absolute one: "The spirit of the law has been gradually changed and modified by the code; and the later decisions, following the spirit, have reached the conclusion that a judgment is not to be regarded as an entirety in the sense of being amendable or subject to correction as to one of the parties, unless the substantial rights of the others would be injuriously affected thereby." Neenan v. City of St. Joseph, 126 Mo. 89; Bensieck v. Cook, 110 Mo. 173; State ex rel. v. Tate, 109 Mo. 265; City of St. Louis v. Lanigan, 97 Mo. 175; Bank v. Umrath, 55 Mo. App. 43; Holborn v. Naughton, 60 Mo. App. 100.    Although a judgment of condemnation by reason of its nature is an entirety and must stand or fall as to all (City v. Gleason, 89 Mo. 67), it is held, nevertheless, that an appellant in such a case may not successfully invoke an error affecting only his non-appealing co-parties.    City v. Lanigan, 97 Mo., supra.

The true reason why the landowner's appeal in a mechanic's lien case affects the judgment against the contractor, stands entirely apart from this proposition of the entirety of a judgment and rests on the owner's statutory right to question the judgment, and have it reversed if he can, because his land is charged with its payment.

This case presents a very different question, namely; whether a contractor who has appealed, but was not aggrieved in any sense by the judgment from which he appealed and against whom no error was committed on the trial, can have such judgment reversed and throw the respondent into costs because an error was committed against the landowner, of which the latter makes no complaint? We think there is no necessity for so holding and thereby engrafting an exception

on the statutes; but that the right policy to adopt and declare is that an original contractor, appealing from a judgment against him in an action under the lien statutes, can not complain of errors committed against the right of a landowner, who took no appeal, unless such errors affect also the substantial rights of the contractor. If the owner is aggrieved, he is afforded an ample and perfect remedy by joining in the appeal.

The judgment is affirmed. All concur.