MARY C. DIXON et al. v. WILLIAM HUNTER, Appellant.

Division One, May 29, 1907.

1. **SHERIFF'S DEED: Reformation in Equity.** A sheriff's deed cannot be corrected and reformed in equity. The power given the sheriff to execute a deed under a tax judgment is statutory, and the statute points out the method of relief against a mistake or accident in executing that power.

2. ———: ———: **Defense: Evidence.** Where defendant, in his answer to plaintiff's suit to ascertain and quiet title, sets up a defective sheriff's deed as the basis of his title, and admits in his answer that that deed is void, and invokes the power of a court of equity to correct and reform the deed, his defense must fail, for a court of equity has no power to correct and reform such a deed, and the power failing the defense must also fail, and the deed cannot be offered in evidence,—there being no question of color of title or limitation in the case. Nor is evidence of the sufficiency of the petition, order of publication, and other things going to establish the regularity of the tax judgment, admissible, for those things do not bear on the issue.

3. **SUIT TO QUIET TITLE.** The object of a suit under section 650, Revised Statutes 1899, is not to determine title as against the whole world, as in proceedings *in rem*, but to determine issues between adversary parties relating to their respective titles.

4. ————: **Decree.** Where the decree adjudges the defendant has no right, title, claim or interest in or to the land, it is no concern of his whether the plaintiffs are properly described in the decree, or whether or not the heirs of two former cotenants are correctly named therein, or their respective interests properly set out.

5. ————: ————: **For Plaintiffs: Aided by Other Parts of Record.** The judgment can be aided by reference to other parts of the same record, and a judgment in favor of "plaintiffs" will stand, if their names can be ascertained without ambiguity from other parts of the record; for instance, that the common source of title was Sugg and Dixon, that Sugg had died, and that plaintiffs had under a prior order of court been substituted as parties.

6. ————: ————: **Aided by Nunc Pro Tunc Order.** Where a judgment may, from existing data in the clerk's office, be corrected by a *nunc pro tunc* entry formally inserting the names of any plaintiffs omitted, either in the caption or body of the judgment, the judgment, aided as it is by the Statute of Jeofails, will not be reversed.

7. ————: ————: **Corrected on Appeal.** Where the record before the appellate court shows that certain persons were made parties plaintiff and that judgment was in favor of plaintiffs, the court will correct any informality in the omission of their names from the caption or body of the judgment.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

MODIFIED AND AFFIRMED.

*Sam J. Corbett* for appellant.

(1) The contents of lost and destroyed judgments may be shown by parol. Gibson v. Vaughn, 61 Mo. 418; Kidd v. Guibar, 63 Mo. 342; McClanahan v. West, 100 Mo. 321. (2) The tax deed was prima facie evidence only of the matters therein recited, and that the law required to be recited, and no more. Sec. 3150,

R. S. 1899; Powell v. Greenstreet, 95 Mo. 15. (3) All the proceedings being regular up to the making of the tax deed, the court had the power and authority, under the provisions of sec. 3218, Revised Statutes 1899, to order the sheriff to correct the tax deed made by the former sheriff (it having been shown by the tax deed offered in evidence that the purchase money had been paid), so as to make said deed conform to the facts as shown by the record and file papers in the tax suit: Talley v. Schlatitz, 180 Mo. 231. The tax deed properly described the land, and shows that the purchaser at the tax sale paid the amount of his bid therefor. The agreed statements of Roberts and Scott show that the purchase was made under valid proceedings and a valid judgment. This being true appellant was entitled to a deed which was valid on its face. Manning v. Coal Co., 181 Mo. 359; Hall v. Klepzig, 99 Mo. 90. (4) The tax deed offered in evidence was competent and relevant as to the matters which it recited, and of such matters was prima facie evidence, and the court erred in excluding it. Sec. 3150, R. S. 1899; Powell v. Greenstreet, 95 Mo. 15; Foulk v. Colburn, 48 Mo. 230; Gibson v. Vaughn, 61 Mo. 418; Kidd v. Guibar, 63 Mo. 342; McClanahan v. West, 100 Mo. 309; Hall v. Klepzig, 99 Mo. 83. (5) The judgment is upon the face of the record erroneous. It appears from the record of the judgment that the court entered up a judgment in favor of Mary C. Dixon, Henry Dixon, W. L. Dixon, George M. Dixon, Mrs. A. I. Moseley and Mrs. Kittie E. Eblin, alone, saying in the judgment nothing about the interest of Edgar G. Sugg.

*Faris & Oliver* for respondents.

(1) (a) The answer of defendant is clearly in the nature of a defense in equity and an attempt to correct a sheriff's deed by an equitable proceeding. This court has said that this cannot be done. Ware v.

Johnson, 55 Mo. 503; Hall v. Klepzig, 99 Mo. 87; Warm-all v. Kern, 51 Mo. 150; Moreau v. Branham, 27 Mo. 35. (b) This would also, it seems, be true for the further reason that the purchaser at the alleged sale for taxes took no title till a proper and sufficient sheriff's deed was made, executed, acknowledged and delivered to such purchaser. Boyd v. Ellis, 107 Mo. 401; Hilton v. Smith, 134 Mo. 499. (2) It is difficult to see how a tax deed, which defendant admits in his answer "was void upon its face," could be admissible as evidence in any case. (3) The judgment is sufficient. The reference to, and the setting out of, the names specifically of the plaintiffs, or a part of them, was unnecessary and surplusage, and the same had no necessary place in said judgment. 1 Black on Judgments, sec. 116; Boggess v. Cox, 48 Mo. 278; Moody v. Deutch, 85 Mo. 244; State ex rel. v. Hunter, 98 Mo. 389; Pickering v. Templeton, 2 Mo. App. 430; Hitchcock v. Baughan, 44 Mo. App. 45; 2 McQuillin's Mo. Prac., sec. 2274.

LAMM, J.—A decree, *nisi,* went in plaintiffs' favor in a suit under section 650, Revised Statutes 1899, to try, ascertain and determine the estate and interest of plaintiffs and defendant, respectively, in one hundred and twenty acres of described land in Pemiscot county. From that decree, defendant appeals in due form and time.

The original plaintiffs were Edgar G. Sugg and the widow and children of John E. Dixon, deceased. Sugg died pending the litigation. Thereupon his death was suggested, and on motion of Mary Baker, his daughter, and W. T. Sugg, his son, they entered their appearance and were made parties plaintiff by an entry of record.

The petition counted on the theory that plaintiffs were seized as owners in fee of said real estate; that it was wild land, not in cultivation or in actual possession; that defendant claimed some interest in it, the nature and character of which was unknown to plaintiffs and could not be described, except that defendant's claim was adverse and prejudicial to them.

Defendant's answer was a general denial, saving that he claimed an interest in the real estate, averring that he was the owner of the whole of it. Accordingly, he set up his chain of title and pleaded facts to the effect that his title originated in a sale under a tax judgment and execution, that one Carleton purchased at said sale in 1883, and received a sheriff's deed from one Peter H. Scott acting as such officer, and that defendant held under mesne conveyances from Carleton. It is then alleged that the tax judgment was rendered against the proper owners of the land to whom it was assessed at the time, "to-wit, Sugg & Dixon;" that the judgment "recites" the names of "Sugg and Dixon;" that the execution "specified their names;" that they were properly summoned by publication in the Gayoso Democrat, a newspaper published in Pemiscot county; that all the records of that county (including the records of the circuit court) were destroyed by fire in 1882; that Carleton's said deed was "void upon its face" through "accident or mistake," in that it failed "to name the judgment debtors" and "recites that the judgment was against the land instead of against the persons;" that it was not the deed that should have been made out and executed and was the product of a careless scrivener, etc.

The relief sought by defendant was affirmative, to-wit, the reformation of the sheriff's deed "in accordance with the judgment and execution sale made thereunder; that the title in and to said land above des-

cribed be divested out of plaintiffs and vested in the defendant; that the title to said land be adjudged and decreed to be legally and rightfully in the defendant;" and for further and general relief.

A replication, denying new matter in the answer, was taken as filed.

Defendant's answer, asking affirmative equitable relief on matter *in pais*, changed the suit from one *quasi*-equitable to one strictly so.

I. At the door of the case, lies this question: Is defendant entitled to correct and reform a sheriff's deed in equity?

The general doctrine (subject to exceptions not in this case) and the reasons underlying it were stated by Justice STORY, when on the circuit (Bright v. Boyd, 1 Story l. c. 487), to be: "This is not the case of the defective execution of a power created by the testator himself; but of a power created and regulated by statute. Now, it is a well-settled doctrine that, although courts of equity may relieve against the defective execution of a power created by a party, yet they cannot relieve against the defective execution of a power created by law, or dispense with any of the formalities required thereby for its due execution; for otherwise the whole policy of the legislative enactments might be overturned." To the same effect is the text of his work on Equity Jurisprudence (1 Story's Eq. Jur. (13 Ed.), sec. 96; *Ibid*, sec. 177).

In Moreau v. Detchemendy, 18 Mo. 522, it was attempted to correct a sheriff's deed by a suit in equity. The relief was denied on the authority of the text above and of Bright v. Boyd, and it was pointed out by GAMBLE, J., that the statutes since 1807 have contained provisions for the completion of sales and the execution of conveyances by sheriffs and that they furnish the remedy to be applied in such cases, and not the power

of a court of equity. / That case was followed in Moreau v. Branham, 27 Mo. 351.

In Ware v. Johnson, 55 Mo. l. c. 503, the same question was up. In that case it was alleged that the sheriff's deed by mistake misdescribed the land and evidence was offered to prove the mistake, which was excluded. It was held by ADAMS, J., that the testimony was properly excluded, and further: "A sheriff, in sales of land on execution, acts in the exercise of powers conferred on him by statute. His authority to make a deed is derived from the statute, and no court except the court under whose process he acts, can supervise his proceedings. If he actually levies on a particular tract of land and sells the same as levied on, and by mistake falsely describes the land in his deed, he may, under the supervision of the court issuing the process, make a new deed which will, as to parties and privies and all purchasers with notice, relate to the time of the sale, and pass the title from that time. If the sheriff who made the sale becomes incapacitated to make the new deed, our statute provides that it may be made by another sheriff, and these provisions of the statutes must be pursued, and furnish the only remedy in such cases. It is a well-settled principle, which needs no illustration or citation of authorities, that a court of equity cannot aid the imperfect execution of a statutory power. The court therefore committed no error in striking out that part of the defendant's answer, and in excluding the evidence, and refusing the instruction in regard to the alleged mistake in their sheriff's deed."

In Hall v. Klepzig, 99 Mo. l. c. 87, the two Moreau cases and Ware v. Johnson were followed — BLACK, J., saying: "The court did not, therefore, err in refusing to correct the sheriff's deed, by making the recital conform to the judgment and execution, even if

the mistᵣ⁻e was satisfactorily shown.'' The concensus of opinion in the highest courts of our sister states lies with the same view. See Stewart v. Wilson, 141 Ala. 405, and a learned and most exhaustive note by Mr. Freeman, following the report of the same case in 109 Am. St. Rep. 33.

The statutory remedy, pointed out by GAMBLE and ADAMS, JJ., was in existence at the time of the sheriff's sale and deed and is now live law (R. S. 1899, sec. 3218) and, on the authority of the foregoing cases, must be held preclusive.

II. If defendant had timely pursued his statutory remedy under section 3218 and had obtained a new and correct deed and was relying on that deed for title in the case at bar, an altogether different question would be up for determination. But on an answer that admits the sheriff's deed on which he relies is void, and which invokes the power of a court of equity to correct the deed and establish title by such correction, he must be held to stand or fall on the existence of such power. The power failing, as it does, the remedy is shut off. There being no actual possession of the land by defendant or his grantors, he could not rely on a defective sheriff's deed creating color of title, and entitling him to invoke the Statute of Limitations, as a defense. [Shaffer v. Detie, 191 Mo. l. c. 393, *et seq.*] In fact, he makes no such defense and sets up no title by limitations. Hence, when he offered his void deed in evidence, it was excluded, and properly so.

So that, in order to determine this case, it is not necessary to consider certain subsidiary questions raised by counsel on both sides. For instance, the court excluded the affidavits of Peter H. Scott and F. D. Roberts, offered in evidence by defendant, Scott and Roberts being respectively sheriff and tax attorney in 1882.

These affidavits, by agreement, were treated as depositions, subject to objections for materiality. Defendant assigns error on their exclusion. The purpose of these depositions was to show that a tax suit had been brought in 1882 against Sugg & Dixon, which culminated in a judgment against the land in question and other land; that an execution issued, the land was sold on advertisement and the void sheriff's deed was executed to the purchaser, Carleton. This evidence was offered to reestablish the court files and records that went up in smoke nearly a generation ago, and which were supposed to support the deed. Practically, the affidavits were a bundle of conclusions on the part of affiants and the probative force of the few facts stated did not re-establish a petition, order of publication (Sugg & Dixon being nonresidents), proof of publication, a judgment, an execution and an advertisement of sale sufficient to support any sheriff's deed whatever. But, observe, all this proof led up to the reformation of the sheriff's deed, and as it could not be reformed in equity (and was waste paper, as it stood), the ruling of the court excluding the proof becomes by-matter.

III. The object of section 650 is not to determine title as against the whole world, as in proceedings *in rem* (Harrison Machine Works v. Bowers, 200 Mo. 219; Graton v. Land Co., 189 Mo. 322; Gage v. Cantwell, 191 Mo. 698), but is to determine issues between adversary parties relating to their respective titles. The sensible and convenient rule for administering justice, having its origin in ejectment suits and relating to a common source of title, has been borrowed and applied in suits under section 650. [See cases, *supra*.] Applying that rule here, we have John E. Dixon and Edgar G. Sugg as the common source of title. Not only so, but defendant conceded in his answer, as well as in his theory below, and here, that he got title, if at all,

through the tax proceedings against Sugg & Dixon. He wants to vest their title, cast on their heirs, out of them and into himself. In this condition of things, if he failed in his proof, there was nothing for the chancellor to do but to settle and determine the title in favor of plaintiffs as against him. This he did, and rightly so, as the pleadings, admissions and evidence stood.

IV. It is insisted by defendant's learned counsel that error is apparent on the record in this: It seems though plaintiffs' counsel suggested Sugg's death and though his two heirs, Mary Baker and W. T. Sugg, were made parties plaintiff by a timely order of record, yet their names are not inserted in the decree. Whether their names are spread of record in its caption, we cannot make out — absent caption. Be that one way or the other, the decree as certified adjudges the title to the described real estate be vested in the "plaintiffs," that defendant be estopped from setting up any claim or title thereto and that "plaintiffs" recover their costs. In the chancellor's findings, it is set forth that certain named parties are the sole heirs at law of John E. Dixon; that as such heirs at law "said plaintiffs" are seized as owners in fee of the land (describing it); and that defendant had no "right, title, claim or interest in or to said land."

On this condition of the record hinges the contention that the decree is erroneous in omitting any reference to William T. Sugg and Mary Baker, and in apparently decreeing the whole title into the Dixon heirs.

There is no merit in this assignment of error. Because:

(a) In the first place, defendant was alone concerned with that part of the decree affecting him. He was not concerned with settling the title as between the two groups of complaining heirs. If he lost it, the subsequent proceedings interested him no more. It is

fundamental that an appellant cannot complain of error unless materially affecting the merits as against him.

(b) Moreover, plaintiffs' corrected abstract shows that the entry on the judge's docket was as follows: "6th August, 1903, cause submitted to the court and judgment for the plaintiffs, finding that they are the owners of the lands sued for and that the defendant had no title or any interest thereto." That entry was amplified into the decree. It was not necessary for the decree to state *seriatim* the heirs of John E. Dixon, nor the heirs of Edgar G. Sugg. The record shows that plaintiffs introduced evidence establishing that they were respectively the only heirs of Sugg & Dixon, the common source of title. So that, a decree in favor of "plaintiffs" (the Sugg heirs being plaintiffs by substitution of parties under a prior order of the court, together with the Dixon heirs) was full enough and well enough without mentioning names. See 1 Black on Judgments (2 Ed.), section 1166, stating the rule deduced from the adjudicated cases to be that the judgment can be aided by reference to other parts of the same record and that a judgment in favor of "plaintiff" or "defendant" will be sufficient, if the names of the parties thus designated can be ascertained without ambiguity from other parties of the record.

(c) Furthermore, from data existing in the clerk's office, this judgment could have been corrected by a *nunc pro tunc* entry formally inserting the names of any plaintiffs omitted, either in the caption or the body of the judgment. Under such circumstances, when aided by the saving grace of the Statute of Joefails (R. S. 1899, sec. 672) as it is, the judgment ought not to be reversed. [Stevenson v. Black, 168 Mo. l. c. 561; R. S. 1899, sec. 660; Morrison v. Turnbaugh, 192 Mo. l. c. 446.]

(d) And, lastly, as the record before us shows

that William T. Sugg and Mary Baker were made parties plaintiff, and as the decree went in favor of plaintiffs, the *data* is here to correct any informality in the caption or body of the decree. We will do so by inserting the names of these plaintiffs and modifying the decree so that its verbiage includes them with the Dixon heirs as owners of the land.

The cause was well tried and the decree, as modified, is affirmed.

All concur.