JOHN B. ARRINGTON ET AL., Appellants, v. JAMES W. McCLUER ET AL.—34 S. W. (2d) 67.

Division Two, December 20, 1930.*

*NOTE: Opinion filed October 13, 1930; motion for rehearing filed; motion overruled December 20, 1930.

1012

*Sturgis & Henson* and *Alfred Page* for appellants.

1014

*Barbour, McDavid & Barbour* and *Allen & Allen* for respondents.

COOLEY, C.—This action was instituted in the Circuit Court of Greene County to determine the title, rights and interests of the parties plaintiff and defendant in certain real estate located in Springfield, Missouri. The property in question consists of a lot in the business section of Springfield with a business building thereon. It is referred to in the record as the Mellon Building, and for convenience will be so called herein. Plaintiffs and the answering defendants sought the judgment of the court determining the rights and interests of all parties to the action, with all further relief which the facts might warrant. The cause was tried as a suit in equity. The trial court found for defendants, and entered judgment accordingly, from which plaintiffs appealed.

Respondents filed in this court a motion to dismiss the appeal for alleged failure of plaintiffs to comply with our rules in the preparation of abstract and brief, which motion was taken with the case. We think the motion not well founded and it is overruled.

Addie McCluer, now deceased, is the common source of title. Defendants claim through her will. Plaintiffs claim under the will of Carrie Arrington who died testate December 13, 1925, and to whom they assert Addie McCluer had conveyed the property by deed. All of the parties are collateral heirs of Addie McCluer except two, viz., the defendant John Schmook, who is administrator *de bonis non* with will annexed of the estate of Addie McCluer and is also one of the executors of Carrie Arrington's will, and plaintiff Merritt M. Logan, co-executor with Schmook of the Arrington will. But plaintiffs, though heirs and (with defendants) residuary legatees and devisees of Addie McCluer, entitled as such to an interest in this property if it was part of her estate at her death, are in this action claiming the whole of it as devisees of Carrie Arrington and are so entitled if the property belonged to Carrie Arrington at her death.

The important question in this case is whether or not Carrie Arrington elected to abide by and take according to Addie McCluer's will, renouncing any claim she might have under the deed to her.

Addie McCluer and Carrie Arrington were cousins and close and confidential friends. Neither had ever married. Both were elderly, Miss McCluer being about seventy at her death and Miss Arrington then about sixty or sixty-five. For many years prior to Miss Mc-Cluer's death they had resided together in a property owned by Miss McCluer, referred to as the home place. Miss McCluer died testate April 7, 1923. Two days later, Miss Arrington filed for record in the Recorder's office two deeds purporting to have been made by Addie McCluer, one dated and acknowledged March 28, 1923, purporting to convey to Carrie Arrington the home place for a recited consideration of "one dollar and other valuable considerations," and the other dated and acknowledged October 24, 1919, purporting to convey to Carrie Arrington the property in dispute, the Mellon Building, for a recited consideration of "one dollar and other valuable considerations." Two days thereafter, on April 11, 1923, Miss Arrington presented and filed in the probate court Addie Mc-Cluer's last will and testament, which was dated and executed May 24, 1921, and in which Carrie Arrington is named as sole executrix to serve without bond, and at the same time she made written application for the issuance to her of letters of administration with will annexed, in which application she estimated the value of real estate belonging to the estate at $2,000, which did not include the home place nor the Mellon Building.

In the first eight paragraphs of the will specific bequests aggregating $35,000 are made. Paragraph nine disposes of testatrix's car. By paragraph ten Carrie Arrington is given the home place, "also the furniture, dishes, silverware and my clothes." There is a controversy about the provision bequeathing the furniture, etc., which will be referred to later. By paragraph eleven the property in controversy, described by metes and bounds, is directed to be sold by the executrix and converted into cash "that it may become a part of my estate to be distributed as herein provided," and by paragraph twelve it is directed that all the residue of testatrix's estate shall be by the executrix distributed as provided by the laws of descent and distribution of the State.

Immediately after the filing for record of the above mentioned deeds, it having become known to the resident McCluer beneficiaries that Miss Arrington had filed same and would claim the Mellon Building under the deed purporting to convey it to her, Rufus Mc-Cluer, an heir and residuary beneficiary under the McCluer will, by his attorney, F. M. McDavid, protested to the probate judge against

the issuance of letters testamentary to Miss Arrington upon the ground that she was claiming as her own under the deed the property in controversy, in hostility to the will and adversely to its provisions and would refuse to execute the power and direction of the will relative to the sale of said property and distribution of the proceeds, and that therefore she was not a suitable person to be appointed executrix. It was then further objected that in no event should she be permitted to act without bond. Mr. McDavid asked that he be given opportunity to be heard and to submit authorities in support of his objections. Those objections and the reasons therefor were made known to Miss Arrington, and it was suggested to her that by qualifying as executrix she might be held to have renounced her claim to the property in dispute and to have elected to take only under the will. She manifested anxiety on that subject and asked the probate judge if in his opinion she would, by qualifying as executrix and administering the estate, be held to have elected to treat the property in question as belonging to the McCluer estate. He informed her that he was not sure what the legal result would be, but that it was a serious question, and advised her to seek legal advice, which she did. She employed Judge John Schmook to represent the estate in the event of her appointment, and conferred with him about the matter of her appointment, the objections thereto and the effect her appointment and qualification might have. Judge Schmook, on the objection of plaintiffs, was not permitted to testify what was said in these conferences, of which there were several, the court holding that the conversations were privileged. It was shown, however, that after conferring with Schmook she consulted Mr. Roscoe Patterson, now U. S. Senator, whom she employed as her personal attorney in the matter of her appointment as executrix. Following that there were conferences between Miss Arrington, Schmook and Patterson relative to the question of her appointment, all of them being advised of the objections thereto and the grounds on which the objections were based. McDavid had called Schmook's attention to the authorities that he thought sustained his objections. There were also conferences between the attorneys, Schmook, Patterson and McDavid, at which the questions involved were discussed. Miss Arrington conferred several times with the probate judge. Schmook was not permitted to testify to what was said at the conferences between himself, Patterson and Miss Arrington. Patterson was not called as a witness.

Finally, on July 21, 1923, the parties met in the probate courtroom to have the question of the appointment determined. The probate judge, J. H. Fairman, was on the bench, ready to hear the objections. McDavid was present on behalf of the objector. Miss Arring-

ton was there with her personal attorney, Mr. Patterson, also Judge Schmook. The uncontradicted testimony of Fairman, Schmook and McDavid shows that Mr. Patterson, speaking for Miss Arrington, then announced in open court that if the objections to her appointment as executrix, which were there fully stated by McDavid, were withdrawn, she, as executrix, would "list" the property in controversy as part of the Addie McCluer estate and "would handle it in accordance with the mandates of the will," treating it as belonging to that estate, and would carry out the provisions of the will, to which Mr. McDavid, for the objector, agreed; that thereupon Schmook, in Miss Arrington's presence and with her knowledge and consent, amended the application for letters testamentary previously filed by her so as to increase the estimated value of real estate belonging to the McCluer estate from $2,000 to $12,000, the increase representing Miss Arrington's then estimate of the value of the Mellon Building; that, relying upon the agreement above referred to and "the actual entry of record" made in his presence (the amendment of the application for letters), Mr. McDavid for the objector withdrew the objections both as to Miss Arrington's appointment as executrix and as to her so acting without bond; and that pursuant to such understanding and agreement Judge Fairman issued letters testamentary without bond to Miss Arrington.

Miss Arrington then took charge of the Addie McCluer estate as executrix. She inventoried the property in controversy and had it appraised as part of the estate, collected the rents therefrom and charged same to herself as executrix in the three semi-annual settlements which she made prior to her death, and disbursed the rentals so received with other assets in payment of legacies and expenses, retaining her commission as executrix on all moneys so disbursed, including such rentals. She paid the taxes on this property out of the estate and took credit therefor in her settlements, listed it as part of the Addie McCluer estate for the purpose of state and federal inheritance taxes, making oath to the federal estate tax return in which it was included, paid the inheritance tax as executrix out of the assets of the estate, and in her official acts as executrix during the two and a half years from her appointment until her death, treated this property in all respects as part of the Addie McCluer estate, unless this circumstance can be said to be an exception, viz.: About July, 1925, two years after her appointment, a new lease of this building was negotiated which she declined to sign as executrix and insisted on signing and did sign individually. She thereafter continued, however, to accept checks for rent payable to herself as executrix and to charge herself as executrix with such rents. In a letter written to Mr. Schmook at that time, admitted over defend-

ants' objection, referring to the lease as originally prepared by Mr. Schmook, she said: "Judge Schmook: I note that you have written this as executrix. I have never in any way acknowledged that building did not belong to me because I believe that it does. All the income from it has been placed in my own personal account. This was according to your instruction in the beginning."

It should be stated further that the evidence indicated that she did carry the account of rents received from this property in a separate account in the bank and she appears to have kept individually a separate itemized statement of receipts and expenditures relative to this property, but, as above stated, she reported all of it as belonging to the estate in her settlements as executrix. In this connection we note that on January 9, 1925, she submitted to Judge Schmook for his use in preparing a semi-annual settlement, a memorandum in which she wrote: "This budget . . . shows no balance on rent from Mellon Bldg. Wish to hold that as reserve fund. Will be ready when needed."

In October, 1924, a demand was made upon the then tenant, by letter, for an increase of rent. This letter begins: "Miss Arrington, executrix under the last will of Addie McCluer, deceased, will accept . . ." It was written by Judge Schmook, attorney for the estate, but was submitted to and approved by Miss Arrington. On February 25, 1925, she, as executrix, presented to the probate court a petition asking for authority to expend out of the estate $225 ·for repairs on this building, which authority was given by the court. The repairs were made and paid for out of the estate and credit taken therefor by the executrix in her next settlement. Other items for repairs and insurance on this property, amounting to several hundred dollars, were paid by her as executrix and credit taken therefor in her settlements.

Referring to Miss Arrington's failure to sell the property pursuant to the will, Judge Schmook testified that "she discussed the new Frisco depot and opening of Main Street as the reason for not making that sale, a likely enhancement in the value of that property," and that in September, 1925, she procured a continuance of her final settlement in order to "keep alive her right to make the sale under the will before final settlement was filed and before discharged."

On February 23, 1925, she as legatee executed to herself as executrix the following receipt: "Received of Carrie Arrington, executrix of last will of Addie McCluer, deceased, of the estate of Addie McCluer (deceased) four hundred five ($405) dollars. Appraised value household goods, etc., shown of that appraised value in inventory, bequeathed to me by said will in clause ten (10) thereof. Carrie Arrington."

On December 10, 1925, three days before her death, Miss Arrington made a will in which, after various bequests, she left to certain named persons the remainder of her property. The next day she added a codicil by which she revoked the above mentioned residuary provision and provided instead that the residue, including "the proceeds of sale of the property (Mellon Bldg.) and my share, real and personal, of the estate of Addie McCluer, deceased," should go to plaintiffs herein (except Logan, Exr.) and directed her executors, Logan and Schmook, to sell said building and distribute the proceeds as directed in the codicil. Plaintiffs claim under that provision. Logan and Schmook qualified as such executors. Schmook also was appointed administrator *de bonis non* with will annexed of the estate of Addie McCluer and in that capacity was sued and defends herein. He refused to join as plaintiff, for which reason also he is made defendant.

Appellants argue that Carrie Arrington did not agree or intentionally elect to accept and abide by the will and renounce her claim of full ownership by deed of the property in dispute, but that she understood she was only agreeing to inventory the property as part of the McCluer estate and so treat it in her settlements until the title should be settled in a suit brought for that purpose if any of the McCluer beneficiaries desired to bring such suit. There is nothing in the record to justify that contention. Not only is there no evidence of any such understanding on her part, but the irresistible conclusion from all the evidence is that with full knowledge of the facts and of her rights, after long and mature deliberation and consultations with able counsel, she deliberately and definitely elected and agreed to abide by the will and to inventory and treat the property, not temporarily but absolutely, as part of the Addie McCluer estate, to be disposed of as provided in the will. It is true, as argued by appellants, that in a number of letters written to some of her relatives after Miss McCluer's death, Miss Arrington indicated her belief and contention that the Mellon Building was rightfully hers. Most of those letters were written while the objections to her appointment were still pending; one or two some two years after her appointment, in which she seemed yet to cling to the opinion that the property rightfully belonged to her. But in none does she refer to any such condition or reservation in connection with her agreement to inventory the property as part of the McCluer estate. In the letters thereafter written she does not mention that agreement, nor the fact that she had inventoried the property. She may have believed that she ought to be allowed to keep it, but that does not affect the question of her election to relinquish it. The letters reveal other facts that probably were considered by her with the aid of her counsel in reaching the conclusion to renounce her claim of ownership

1024

and abide by the will. While portions of the letters were excluded enough was admitted to show that both deeds to her were deeds of gift without actual consideration, one executed very shortly before Miss McCluer's death and the other (that to the Mellon Building) apparently delivered about the same time; that so far as she knew no one but herself knew about the deeds and that she understood she could not testify to the execution and delivery thereof; that she understood Addie's "mistake" in devising the Mellon property after making the deed "gave cause for a legal question," of which advantage would be taken by certain of the beneficiaries.

It was shown by plaintiffs' witnesses that Miss Arrington was well educated and a shrewd, competent and experienced business woman, which is conceded, and that for several years next preceding Miss McCluer's death she had looked after the latter's property, "as to taxes, insurance, repairs, bank accounts and the like," maintaining a confidential relation to the grantor in the deeds. Some of the McCluer beneficiaries, as shown by their answers, contended that the deeds were without consideration and had never been delivered. Miss Arrington may well have doubted her ability to hold title either to the home place or to the Mellon Building under her deeds. By electing to take under the will her title to the home place was assured. As heir and residuary legatee and devisee of Addie McCluer she would take a one-twentieth share of that estate after payment of specific legacies, which estate, as shown by her third semi-annual settlement, amounted to at least $83,000 if the property in controversy was worth the $10,000 at which she estimated it. Appellants have not set out the settlements in full so as to show expenses of administration. No reference is made to any debts owed by Addie McCluer, from which fact and the apparent solvency of the estate, we assume she owed none. We think from the evidence it may safely be assumed that, after paying the $35,000 of specific legacies and counting the Mellon Building worth $10,000 there would be for distribution, after paying executrix's commission and other administrative expense, say $40,000; and upon that basis Miss Arrington, by accepting the will, receiving the personal property bequeathed to her and receiving her commission as executrix, would have a total of approximately $6500, as well as assuring her title to the home place, worth, according to her estimate, $6500. Considering the circumstances in which she was placed it was not such a bad bargain from a purely business standpoint.

Moreover, it is apparent from her correspondence that for what may be termed sentimental reasons she was keenly anxious to act as executrix and administer the estate. She seemed to regard it as an almost sacred trust reposed in her by her deceased cousin. That no doubt to some extent influenced her decision. As said in Bumpass

v. Johnson et al. (Tex.), 285 S. W. 272, 274, "it may be, and often is, true that the party making the election is prompted to do so by considerations other than the value of the estate or property actually received under the will."

That Miss Arrington and her counsel believed she would likely be denied appointment as executrix unless she renounced her hostile claim to the Mellon Building is more than probable. And unless she so renounced she should not have been appointed, because so long as she thus claimed as her own, property which the will directed should be sold and the proceeds distributed otherwise, she was not a suitable person to execute the will and not entitled to letters testamentary. This appears self-evident and it has been properly held that persons asserting or claiming interests hostile to such a trust are not suitable persons to execute the trust. See In re Estate of Padgett, 114 Mo. App. 307, 89 S. W. 886; Davis v. Roberts, 206 Mo. App. 125, 226 S. W. 662 and cases cited (executor claiming property adversely to the estate); Miller's Admr. v. Bidlingmaier, 26 Mo. 483. The statute, Section 11, Revised Statutes 1919, gave her the right, she having been thereto nominated in the will, to have letters testamentary granted to her *unless* she were shown to be an unsuitable or improper person to execute the will, which she was so long as she asserted ownership of the property in dispute. That claim relinquished she became a suitable person for the trust and entitled to the appointment and the emoluments incident thereto,—in this case a valuable right.

It was shown that Miss Arrington was quite deaf, having to use an ear trumpet, and appellants suggest that she may not have heard all that was said in the probate court room on July 21, 1923. When it is remembered that the matter of her appointment as executrix was in suspense for over three months, during all of which time she knew of the objections to her appointment and the reasons therefor, consulted with the probate judge who testified that he sometimes wrote out for her answers to questions, consulted and advised relative thereto with able counsel of her own selection, and was herself a capable business woman, there can be no doubt that she was fully informed as to the facts and her rights. Neither can there be any doubt that when her counsel, a reputable attorney, spoke for her in the court room he was with her knowledge and authority announcing her deliberately formed decision. No other presumption could possibly be indulged under the facts shown.

Appellants, conceding as we understand them, that an election may be shown by acts *in pais* where election is required, contend that the probating of a will and qualifying and acting as executor does not constitute an election. Authorities are cited holding that such acts, of themselves, do not necessarily constitute an election. They may be of weight, however, in determining the question of intention to elect, where there has been no positive, unequivocal act or declaration showing such purpose and it must be deduced from all the facts and circumstances, as frequently happens. The authorities holding as above indicated are not applicable, because in this case, as we have pointed out, there was a definitely declared purpose to accept and abide by the will, followed by official acts as executrix consistent only (assuming honesty and good faith on her part) with such expressed purpose. In Moseley v. Bogy, 372 Mo. 319, 331, 198 S. W. 847, the court, apropos of this question, said:

"Often it has been held that any act or declaration of the widow plainly indicating a purpose to take under the will, or recognizing the force of the will, constitutes an election"—citing cases. And see 1 Pomeroy's Eq. Juris. (4 Ed.) sec. 514.

In the Moseley case, under the circumstances there shown, it was held that the acts of the person named in the will as executor in proving the will and qualifying under it, were inconsistent with any theory except an election to take under it. We so hold as to the declarations and acts of Miss Arrington in this case.

But appellants insist that Miss Arrington received nothing by the will that was not already hers and therefore was not required to elect "and did not lose title to the property in controversy by any election under the McCluer will." They state the principle contended for thus:

"Election is a choice which a person must make between the acceptance of a benefit under an instrument, and the retention of some property already his own which the same instrument purports to dispose of to another"—citing Bispham, Equity (4 Ed.) sec. 295; Pomeroy, Eq. Jur. (3 Ed.) secs. 395, 462, 477; Beach on Wills, sec. 154.

They argue that both the home place and the Mellon Building were already hers by deed and that the will did not in fact give her the personal effects mentioned in clause 10 because the words: "Also the furniture, dishes, silverware and my clothes," were interlined with pen and ink after the will was executed, the instrument otherwise being typewritten. The testimony of the two attesting witnesses as written and preserved by the clerk of the probate court when the will was presented for probate was that they saw Miss McCluer sign and heard her publish "the foregoing instrument" as her will, "ex-

cept that part in handwriting . . . as follows (words above quoted).'' The judgment admitting the will to probate makes no reference to any exception. It is in the usual form, reciting the presentation of ''an instrument in writing purporting to be. the last will and testament of Addie McCluer;'' that proof of its legal execution had been duly made and the testimony of the attesting witnesses reduced to writing and concluding with a formal judgment adjudging ''said instrument in writing'' to be Addie McCluer's will and admitting it to probate.

Appellants concede that the judgment admitting the will to probate cannot be collaterally attacked, but say that the whole record, which they say includes the testimony of the subscribing witnesses taken and certified by the clerk, may be looked to in. order to determine the meaning of the judgment. We deem it unnecessary to discuss the legal question thus suggested, because all parties interested in the will treated it as giving Miss Arrington said personal effects. She so interpreted it and accepted the bequest. Some question is raised as to whether she actually received those things, because it appears that upon his appointment Schmook charged himself as administrator d. b. n. c. t. a. with those goods. The evidence is not clear why he did that. But she had receipted for them and Schmook testified, without objection, that they were inventoried as part of the assets of her estate after her death. If that was not true the inventory of her estate would have so shown. It was not offered. The evidence sufficiently shows that she received them. Those articles doubtless had to her a value other and greater than their actual cash value as shown by the appraisement. She was also one of the residuary legatees and the evidence as outlined above indicated a substantial residuary estate in which she would share under the will.

''If A gives to B property belonging to C, and by the same testamentary devise gives to C other property belonging to himself (testator), C cannot take under the will without recognizing B's rights to take the property devised to him.'' [Furche et al. v. Sailer (Tex.), 8 S. W. (2d) 334, 341.]

See also Bumpass v. Johnson (Tex.), 290 S. W. 739, holding it to be the true rule now well established that the doctrine of election under a will is not predicated upon the theory of comparative advantage by accepting, or dependent upon a profit on the whole transaction, but rather upon the theory that one cannot by accepting under the will gain any substantial advantage he would not otherwise have enjoyed without suffering the consequences of an election and waiving his rights as an heir.

In Fox v. Windes, 127 Mo. 502, this court quotes approvingly from 2 Herman on Estoppel and Res Adjudicata, section 1028, page 1156,

that "the principle (of election) . . . rests upon the equitable ground that no man can be permitted to claim inconsistent rights with regard to the same subject, and that any one who claims an interest under an instrument, is bound to give full effect to that instrument as far as he can. A person cannot accept and reject the same instrument, or having availed himself of it as to part, defeat its provisions in any other part; and this applies to deeds, wills, and all other instruments whatsoever."

Many of the cases cited by appellants are cases dealing with election by a surviving spouse who received nothing under the will to which he or she was not entitled under the law without the will, as for example, Burgess v. Bowles, 99 Mo. 543, 12 S. W. 341, wherein the court said:

"But the doctrine of election can have no application where the property received is not greater than the party would have the right to take under the law without reference to any will. . . . If there was no property on which the will would operate, as against the widow's absolute statutory rights, there would be no consideration for an election by her and the reason on which the doctrine of election rests would fail."

Such cases are not applicable to the facts of this case. We think that clearly under the facts herein Miss Arrington was put to her election. The fact that she did elect is not deducible alone by implication, but was positively and clearly shown.

Having thus definitely elected to accept and carry out the provisions of the will and renounce her claim under the deed, and having as executrix acted in accordance with that undertaking, inducing those who might otherwise have contested her claim to the property in controversy to believe that she intended to carry out faithfully the provisions of the will, such election bound her and the plaintiffs who claim under her. [1 Pomeroy's Eq. Juris. (4 Ed.) sec. 516, p. 980; 2 Underhill on Wills, sec. 731; Moseley v. Bogy, supra; Goodrum v. Goodrum, 56 Ark. 532.] It would be unconscionable to permit her attempted retraction by devising the property to plaintiffs, if she so intended such devise, to have effect.

Appellants urge that their motion to strike out portions of the answer of defendant Schmook, Admr. d. b. n. c. t. a. of the Mc-Cluer estate, should have been sustained on the ground that he, being also co-executor of the Arrington will, should not have been permitted to dispute the title plaintiffs claimed under that will. We deem it unnecessary to discuss that question. Other answering defendants filed similar answers or adopted as their own Schmook's answer *in toto*, and plaintiffs joined issue thereon by reply, so that in any event the issues were all presented and were fully tried out.

Certain of the defendants who were notified by publication did not appear but made default. The learned chancellor determined and adjudged to all the parties plaintiff and defendant their respective shares as heirs and residuary devisees of Addie McCluer. Error is charged in that the court found and adjudged that such defaulting defendants were owners of interests as defined in the judgment, plaintiffs' contention seemingly being that those interests should have been adjudged to plaintiffs regardless of the court's determination of the issues between plaintiffs and the answering defendants. They contend that under our statute, after the default of the non-appearing defendants, the court was without authority at the succeeding term to do other than treat the allegations of the petition as confessed by such defaulting defendants and render judgment for plaintiffs as to those interests without proof. Appellants cite in support of this point: Robinson v. Ry. Const. Co., 53. Mo. 435; Land Imp. Co. v. Creason et al., 264 Mo. 452, 175 S. W. 55; Dixon v. Hunter, 204 Mo. 382, 102 S. W. 970; Lombard v. Clark, 33 Mo. 308; Lyon v. Page, 21 Mo. 104; Christopher v. Kelly, 91 Mo. App. 93; McCutchin v. Batterton, 1 Mo. 342; Phillips v. Bachelder, 47 Mo. App. 52.

The decisions in the cases cited are based upon facts and reasoning that we think make them inapplicable. Perhaps the nearest in point is Land Imp. Co. v. Creason et al., supra, which was a suit to determine title. The plaintiff claimed the whole title. Creason, notified by publication, did not appear. The other defendants answered, claiming the title in themselves. The court found and adjudged that neither the plaintiffs nor the answering defendants had title, and further adjudged the title to be vested in Creason. The judgment was reversed and cause remanded with directions to the trial court to make a general finding against plaintiff, dismissing its petition, and in favor of defendants for costs, but to refrain from affording affirmative relief to defendant Creason who had defaulted. That decision disposes, adversely to plaintiffs, of their claim that the interests of the defaulting defendants should have been adjudged to plaintiffs. By their pleading they set forth the title by which alone they claimed, viz., the deed from Miss McCluer to Miss Arrington, and the latter's will. That claim of title failing, the judgment, as in the Creason case, properly went against them (except of course as to their interests under the McCluer will which were adjudged to them). That being true, it would seem they are not in position to complain that the interests of defendants as among themselves were not properly adjudged. Apposite, we quote from Hunter v. Dixon, supra, wherein the defendant, who lost on the trial, complained on appeal of error in the record for that the names of certain of the plaintiffs were not inserted in the decree.

"... the defendant was alone concerned with that part of the decree affecting him. He was not concerned with settling the title as between the two groups of complaining heirs . . . It is fundamental that an appellant cannot complain of error unless materially affecting the merits as against him."

In this case the answering defendants plead title not alone in themselves but in themselves and in the other defendants and plaintiffs as heirs and residuary devisees of Addie McCluer and ask that title be so adjudged. Plaintiffs' pleadings also state facts so showing, unless their claim of ownership through Addie McCluer's deed be sustained, and they pray judgment determining the rights of all parties. That the non-appearing defendants have the interests that were adjudged to them, if plaintiffs' claim through the McCluer deed fails, was shown by the pleadings on both sides. Moreover, the McCluer will directs that the property be sold, the whole of it, not merely the interests of the answering defendants. That fact is pleaded. The judgment could not effectively and properly dispose of the issues presented by the pleadings without settling the rights of all of the parties interested in the property, as, for example, must be done in a partitition suit whether all the defendants appear or not. We think the facts and the issues presented by the pleadings in this case distinguish it from the Creason case in so far as the latter held that no title could be decreed in a defaulting defendant and distinguish it also from the other cases cited.

We find no prejudicial error in the record. The judgment of the circuit court was for the right parties and it should be and is affirmed. *Davis* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. *Blair, P. J.,* and *White, J.,* concur; *Walker, J.,* absent.