## JOSEPH MONTZ v. MICHAEL G. MORAN, Appellant.

### Division Two, January 4, 1915.

1. **JUDGMENT BY DEFAULT: Motion for New Trial: Set Aside and Nunc Pro Tunc Judgment.** Defendant took leave to plead at the April term to plaintiff's bill to cancel a deed, but failing to do so, a judgment by default, upon its face final, was rendered against him at the September term. Within four days thereafter he filed a motion for a new trial and in arrest, and the cause was continued, specifically upon said motion for new trial. At the January term the court set aside the judgment entered at the September term, on the ground that a final judgment rendered at the same term at which the default was noted, was prematurely entered. Thereupon said motions were overruled, and an interlocutory judgment by default, *nunc pro tunc* as of the September term, was entered. Thereafter, at said January term the court heard evidence on the part of the plaintiff, and entered judgment for him decreeing the relief prayed for. Defendant, after the September judgment was set aside and before the final judgment in January was entered, asked no leave to plead, though presumptively present. *Held*, that the final judgment entered at the January term is not a *nunc pro tunc* final judgment entered at that term as of and for the September term, but there was a *nil dicit* judgment entered at the January term *nunc pro tunc* as of and for the September term, and thereafter a final judgment entered at the January term, and this last judgment cannot be set aside. Defendant's legal duty was to file at the September term a motion to set aside the default judgment, instead of his untimely and useless motion for a new trial; but as the case was continued on that motion, and had the effect of postponing the finality of the judgment until the next term, and then of having that set aside and a proper judgment of default entered at that term as of the September term, he cannot complain; and, if it was error, in response to such a motion, to set aside the final judgment entered in September, and in January to enter a proper one as of that

term, it was an error of the class the statute (Sec. 2082, R. S. 1909) declares is not reversible. Furthermore, defendant's failure to move to set aside the *nunc pro tunc* default judgment after it was entered and to ask leave to plead, is of deep-going significance.

2. ————: Corrected Nunc Pro Tunc: Error of Clerk. Where a judgment is rendered which the law does not warrant (for instance, where a final judgment is entered at a term at which the law permits only a default judgment) and sufficient data are present to warrant a correction thereof, such judgment may be corrected *nunc pro tunc* at a succeeding term, since the law deems the unwarranted judgment that of the clerk, and not that of the court.

3. ————: Appearance and Pleading: Trial Term: Final Judgment. Fifteen days' service in any case or in any county is sufficient to require a defendant to appear and plead; all cases of whatever kind, in counties having over forty thousand inhabitants, are triable on fifteen days' service, and default may be noted and final judgment entered at the return term for failure to plead on or before the third day, unless further time be given by the court; in counties having forty thousand or less, all actions on notes, bonds and bills of exchange, and suits on accounts and accounts stated where there has been personal service of such account with the petition annexed, are triable on fifteen days' service, at the return term; and all cases of whatever kind, wherein thirty days' service has been had on defendant, are triable at the return term, in all counties; and final judgments by default or *nil dicit* can be taken at the return term in all sorts of actions in which there has been full thirty days' service, in all counties having forty thousand inhabitants or less.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*E. M. Swartz* for appellant.

The court having rendered a premature judgment at the September, 1911, term of court, it had no authority at a subsequent term to set aside that judgment and render another and an entirely different judgment. Courts at a subsequent term cannot cor-

rect the mistakes of the judge or render a judgment different from that actually rendered at the previous term. Burnside v. Wand, 170 Mo. 543. "A court cannot at a subsequent term change its judgment to one which it neither rendered nor intended to render." Ross v. Ross, 83 Mo. 100. "As a general rule no final judgment can be amended after the term at which it was rendered. The law does not authorize the correction of judicial errors under the pretense of correcting clerical errors." Freeman on Judgments (3 Ed.), sec. 69. Clerical errors may, of course, always be corrected, but judicial errors at a subsequent term cannot. The distinction between clerical and judicial errors is clearly discussed by THOMPSON, J., in Evans v. Fisher, 26 Mo. App. 541. The judgment entered in the record is presumed to be the one rendered and cannot be corrected or changed until the record, the clerk's minutes, judge's docket or some other paper in the cause show to a reasonable degree of absolute certainty that another and different judgment was rendered than the one entered. That the judgment entered is erroneous, is not sufficient to authorize its change, and the issue is not the correctness of a judgment, but whether the entered judgment was the rendered judgment. Burns v. Sullivan, 90 Mo. App. 1. The last above well considered case collates numerous cases, considers and distinguishes them. It will never do to say that a judgment entered is not the judgment rendered merely because it ought not to have been rendered. Bohn Bros. v. Stivers, 75 Mo. App. 291; State v. Jeffors, 64 Mo. 378; Wooldridge v. Quinn, 70 Mo. 371; Ross v. Ross, 83 Mo. 100; Evans v. Fisher, 26 Mo. App. 541. The court says that the judgment "was prematurely entered," and then proceeded to set the same aside, hold it for naught, and then *instanter* enters up another and an entirely different judgment than that theretofore entered. That in effect sustained the motion for new trial. There

is no pretense that it was the mistake of the clerk, but the judgment entered was the judgment actually rendered by the court. Therefore, in this case the court rendered one judgment at one term of court, set the same aside at a subsequent term and rendered another and entirely different judgment, making two judgments in one case on one trial. This we submit the court could not do. The court may correct a judgment entry so as to make the judgment that which the court in fact rendered, but on the other hand if the court renders a judgment which it intended to render, it has no authority at a subsequent term to change said judgment by rendering one that was not in fact rendered. Davison v. Davison, 207 Mo. 702.

*W. M. Fitch* for respondent.

FARIS, J.—Plaintiff sued defendant in equity to cancel a deed. Defendant took leave to plead at the April term, 1911, but failing to do so a judgment by default, upon its face final, was rendered against him at the September term, 1911, the same being the term at which the default was entered. [To distinguish it we will refer to this as the September judgment.]

At this September term and within four days after the rendition of the judgment aforesaid, defendant came in and filed a motion for a new trial and a motion in arrest of judgment. The case was then continued, specifically because of the pendency of said motion for a new trial, with the motion in arrest also pending, and no further action was taken till the January term, 1912, at which time the court took up the defendant's motion for a new trial and in the presence of defendant and his counsel, set aside the final judgment rendered by the court at the September term, upon the ground inferably (though the reason is not clear), that a final judgment rendered at the same term at which the default was noted, was, in this kind

of case, prematurely entered. Thereupon the court overruled the defendant's said motions for a new trial and in arrest, and thereafter at the said January term, entered an interlocutory judgment by default, *nunc pro tunc*, as of the September term, 1911. Following all this and at the same term, the court heard evidence in the case on the part of plaintiff, and entered judgment (which we may, to distinguish the two judgments and for brevity, call the January judgment), for plaintiff, decreeing to him the relief for which he prayed. Defendant, though presumptively still present, both in person and by counsel, asked no leave to plead, or otherwise raised his voice, after the September judgment was set aside and before the January judgment was rendered, but throughout all these proceedings stood mute.

Defendant thereupon appealed, taking time till the next term of the court *nisi* to file his bill of exceptions, but neglecting so to do in the time given to him, or at any other time, is here now solely upon a bare and most meager record proper.

## OPINION.

After the court *nisi* had set aside the September judgment and overruled defendant's said motions and entered the *nunc pro tunc* order of default, as also the January judgment, he took this appeal, without having in the interim filed, or asked leave to file, any pleading, or to be heard in any way, and without filing any new motion for a new trial or any other motion of any kind.

**Judgment by Default.**

Nevertheless, defendant contends that the bare record of the two judgments, which is practically all there is before us, shows that the trial court entered a final judgment by default at the return term, without the antecedent formality of noting a default and entering thereon an interlocutory decree. He further

contends that the final judgment entered at the January term, 1912, is a *nunc pro tunc* final judgment entered in January as of and for the September term, 1911, and that these things are so fatally erroneous as to constitute reversible error upon the record, without more.

We do not so read the orders or the judgment entered by the court at the said January term. We think on the contrary, that they fairly, but concededly not clearly, show that the learned trial judge, deeming the final judgment "which was written up" and "spread upon the records" by the clerk at the return term in September, erroneous in that it was premature, set aside the said *final* judgment and noted a default and entered an interlocutory decree, *nunc pro tunc* as of the September term, 1911, and thereupon as the record before us, as we read it, solemnly recites, proceeded to hear the plaintiff's evidence and then entered the final January judgment here appealed from.

Defendant's plain legal duty was to file at the September term his motion to set aside the default judgment taken against him, as the statute provides. [Sec. 2094, R. S. 1909.] Instead of this he filed untimely (if we test the matter by his own position), and therefore useless, motions for a new trial and in arrest. We are of course compelled to name these motions as the defendant names them; since they are not before us.

It was upon defendant's motion for a new trial that the case was continued. This motion had the effect of justifying in law the continuance of a case which otherwise (a final, instead of an interlocutory judgment having been rendered) would have been utterly at an end when the September term adjourned. The said motion of defendant suspended or held up the *finality* of the judgment till the disposition of the motion     (McGurry v. Wall, 122 Mo. 614; Walter v.

Scofield, 167 Mo. 537; Guinan v. Donnell, 201 Mo. 173), and on such a state of facts a setting aside of the September judgment at the January term, was tantamount to setting such judgment aside at the term at which it was entered, since the pending motion for a new trial had the effect of thus tacking the two terms together, so far as concerns this case.

The question of the right to note default and render final judgment in this kind of an action in a county having less than forty thousand inhabitants, is not directly in the case, though involved indirectly. For the error complained of, if found to be such, is error regardless of its prematurity *vel non;* because if the September judgment was not premature, but absolutely good, it yet was set aside, and as a final judgment thereupon fell out of the case. But if it was good and binding upon defendant as rendered, he having kept alive between terms the court's dominion over it, we ought not to reverse this case, for surely it would then fall into the category of cases which we are by statute forbidden to reverse for that the error is not materially hurtful to appellant (Sec. 2082, R. S. 1909); furthermore, it would fall among that class of cases wherein judgment warranted by the facts having been rendered against defendant, the mere bare form of it interested him no more    (Dixon v. Hunter, 204 Mo. 382; Nave v. Todd, 83 Mo. l. c. 606; Emery v. Whitwell, 6 Mich. l. c. 492); if the court was not warranted in rendering a judgment *nil dicit* (as the one here is, though called a default judgment in the record) upon the facts at the return term, and if the September judgment was premature it could have been set aside at the succeeding January term, 1912, even upon a motion filed at that term. [Dougherty v. St. Vincent's College, 53 Mo. 579; Nave v. Todd, 83 Mo. l. c. 606; Harbor v. Railroad, 32 Mo. 423; Sims v. Gray, 66 Mo. 613.]    Likewise, manifestly and for the identical reasons moving the court in the Dougherty case, supra,

the premature and improvident judgment, if it was not the one allowed to be entered by statute or law, could yet have eked out from its own contents and statements the basis for the *nunc pro tunc* order made. Where a judgment is rendered which the law does not warrant and data be present sufficient in law to warrant correction thereof, such a judgment may be corrected *nunc pro tunc;* since the law deems the prohibited judgment that of the clerk and not that of the court. [Burnside v. Wand, 170 Mo. 531; Railroad v. Mockbee, 63 Mo. 348; Saunders v. Scott, 132 Mo. App. 1. c. 213; Burns v. Sullivan, 90 Mo. App. 1. c. 5; Sperling v. Stubblefield, 105 Mo. App. 1. c. 494.]

As forecast above the reason for this anomaly and apparent contradiction of the general rule (which is that orders *nunc pro tunc* go to correct clerical misprisions only, and not judicial errors), is not far to seek; for, if a judgment be rendered which is against the law or a statute, and thereon a timely writ of error be taken, any appellate court would inevitably set aside such unlawful judgment. Why then compel a litigant to come to an appellate court to get that done which can as well be done by the trial court without the time and expense of a writ of error? If, however, the judgment be one which the court may lawfully render, the reason fails and of course the rule fails.

When we consider the object of the various amendments of section 1799, Revised Statutes 1909, which fixes the time of pleading (See collation and discussion of these amendments in Miller v. Gordon, 96 Mo. App. 395), and read this section in connection with those infra, providing for service of summons and orders of publication (Sections 1757, 1758, 1777), we see that by the latter sections fifteen days' service is sufficient in any case or in any county to require defendant *to appear and plead.* Then turning back again to section 1799 we note that all cases of whatever kind in counties having *over* forty thousand inhabitants are

triable on fifteen days' service, and that default may
be noted and final judgment rendered at the return
term for failure to plead on the third day, unless fur-
ther time be given by the court.  We note further in
the history of said section 1799 (as it stood before
the amendment of 1889) that in counties having forty
thousand or less inhabitants (in which category we ju-
dicially notice  Clinton county falls)  all actions on
notes, bonds and bill of exchange, were triable on fif-
teen days' service, i. e., at the return term.  [Miller v.
Gordon, supra; Reed Bros. v. Nicholson, 158 Mo. 624.]
The amendment of 1889 (Sec. 2042, R. S. 1889) put an-
other class of cases into the list of those triable in
the latter counties, on fifteen days' service, to-wit, suits
on account and account stated where personal service
of such account with the petition annexed, was had on
the defendant. Likewise this amendment made *all cases
of whatever kind,* wherein service was had on defend-
ant *as much as thirty days before the beginning of the
term,* triable at the return term.  Thus making plead-
ing required in all actions and in all counties on fifteen
days' service; and making actions on accounts, etc.,
bonds, bills of exchange and notes, triable in all coun-
ties on fifteen days' service.  And making all actions
in all counties, including those having forty thousand
or less inhabitants, triable at the return term when
full thirty days' service is had before the return day.
If we turn now to the statutes which provide for the
nature of the judgment which the court is empowered
to enter in the classes of actions and periods of serv-
ice above discussed, we note that by section 2093, Re-
vised Statutes 1909, it is provided that: "If the de-
fendant shall fail to file his answer or other pleading
within the time prescribed by law . . . an interloc-
utory judgment shall be given against him by default."
Section 2098  provides that in case of an interlocutory
judgment by default *nil dicit* (confusing manifestly
the distinction existing), confession, or upon an issue

of law in any action (in substance) wherein the amount due is definitely ascertainable, the court shall assess the damages "and final judgment shall be given thereon." Section 2099 is as follows:

"In all cases of interlocutory judgments not provided for in the two preceding sections, the plaintiff may, if he demand it, have a jury to assess his damages. If no jury be demanded the court shall assess the damages, or give the other relief asked in the petition, and final judgment shall be given thereon."

Therefore, notwithstanding much of obscurity due to faulty construction and loose grammar is to be found in section 1799, we think it plain that the intent of the Legislature has been to allow final judgments by default or *nil dicit* on full thirty days' service, to be taken in all sorts of actions in counties having forty thousand inhabitants or less. We do not think this has been doubted among the bar, since the amendment of 1889. It may not have been doubted here even. We cannot ascertain from the record whether or not this point was in question. But however all these things may be, the motion for a new trial of defendant kept the finality of the September judgment suspended so that it could be dealt with by the court at the January term just as if it had been rendered at that term. If this were not so, no motion for a new trial could ever be continued from one term to another. For as soon as the term at which a judgment was rendered had lapsed, the judgment would become irrevocably final, even as "the laws of the Medes and the Persians." The finality of the September judgment therefore being suspended, the court had the right at a subsequent term to set it aside.

So far as the record shows defendant stood mute after the September judgment was set aside, and both before and after the default was noted by the *nunc pro tunc* order. Defendant neither asked leave to plead before such order was made, nor filed thereafter any

motion to set such order and default aside before it was made final. [Sec. 2094, R. S. 1909.] It might well be that it was anomalous, if not error, to take up a motion for a new trial, set aside the judgment at which the said motion was directed, and then overrule such motion. But of this we cannot judge, and upon it we may not rule, for the motion was not preserved and is not in any way before us for review. If defendant had shown any diligence after the court set aside the September judgment; if he had asked leave to plead and such leave had been refused; if he had filed any motion showing any good cause to set aside the entry of default, we should feel that we ought to reverse this case for this irregularity. But since the learned trial judge, deeming a mistake had been made, did all that lay in his power to correct such mistake; since withal defendant stood by and stood mute, and since from all we can gather the judgment was a righteous one, we think that the defendant waived all of the technical errors of which he complains, and furthermore that those errors fall into the category of such as are not by statute reversible. [Sec. 2082, R. S. 1909.] Let the case be affirmed.

*Walker, P. J.,* and *Brown, J.,* concur.